# EXHIBIT 8
# (part 2)

**EXHIBIT  B**

# *Medical Development International*



# PROPOSAL
# Comprehensive Health Services

## California Department of Corrections and Rehabilitation

for the

## California Correctional Institution and California State Prison Los Angeles County

**March 8, 2006**

THIS DOCUMENT IS CONSIDERED BY THE SUBMITTER TO BE PRIVILEGED AND CONFIDENTIAL INFORMATION NOT SUBJECT TO MANDATORY DISCLOSURE.



March 8, 2006

Dr. Peter Farber-Szekrenyi
Chief, Division of Correctional Health Services
California Department of Corrections and Rehabilitation
1515 S. Street, Suite 502 South
Sacramento, CA 95814

Dear Dr. Farber-Szekrenyi:

This letter and subsequent proposal are intended to explore an opportunity for Medical Development International (MDI) to provide Comprehensive Health Services to two California Department of Corrections and Rehabilitation (CDCR) institutions. We hope you find the services detailed in this proposal a compelling addition to how health services are managed California.

MDI has more than a decade of experience managing Comprehensive Health Services for the Federal Bureau of Prisons. The provision of these services includes the following:

- ➢ Negotiation and contract management of hospital, clinic, ambulatory surgery center, long-term acute care, mobile healthcare, and other alternate site facility networks to service inmates "outside the walls" of the correctional institution (C.I.)
- ➢ Negotiation and contract management of physicians, technicians, and other allied healthcare personnel for servicing inmates at contracted healthcare facilities, in their private practice locations, and on-site at the C.I.
- ➢ Coordinate and provide all scheduling of inmate healthcare services between the physicians, healthcare facilities, and the C.I.
- ➢ Processing, payment, and adjudication of all medical claims – including consolidated billing

MDI's provision of these services to correctional systems allows them to focus on their core competency – provision of health services "within the walls" of the institution. Our services help you manage outside medical services much more efficiently and economically. The Bureau of Prisons has realized significant budget savings utilizing MDI for these services without the inherent downsides of other approaches, in particular privatization. You retain the control over utilization, referral of your inmates, and your staff.

We look forward to the opportunity to speak with you about this in the near future. Thank you for your review, and please call with any questions you may have in the interim.

Sincerely,


Theodore R. Willich
Vice President

# Table of Contents

| Chapter Heading | Page |
|---|---|
| Company Background | 5 |
| Hospital Provider Network | 6 |
| Hospital Provider Network Maps | 8 |
| Hospital Network Services Matrix | 9 |
| Physician Provider Network | 10 |
| Contract Management and Financial Administration | 11 |
| Pricing Proposal | 12 |
| Addenda | 13 |
| HIPAA and Privacy Rules | 19 |

# Company Background

Medical Development International (MDI) was founded and incorporated September 1992 as a Medical Services Organization (MSO) providing electronic billing and contract management services for physicians. In 1994, a local correctional care customer approached MDI to request that we develop and contract with a healthcare network to provide comprehensive health services for the institution. The resulting contract launched MDI into the correctional healthcare field. Today, MDI provides cost-effective healthcare for over 100,000 inmates in 26 states through over 50 contracts.

MDI has pursued a single goal of developing contracting expertise and administrative systems that offer the highest quality and most comprehensive managed care services to our customers, who want to realize significant savings without the need to privatize their healthcare services. MDI is not affiliated with any healthcare delivery system, as is the case with large academic-based healthcare systems. Therefore, MDI is not restrained in its ability to contract with a multitude of outside, independent providers. This maximizes the savings and range of services available to our clients' patients.

MDI's claims processing service eliminates obvious conflict of interest difficulties in the claims adjudication process. Many other Federal Programs (e.g. Medicare) select independent contractors such as MDI, called *fiscal intermediaries,* to process and disburse the payment for services rendered by providers. MDI's position as a Medical Services Organization enables us to fully administer the **Private/Public** contracting model utilized by many jurisdictions; we support the fact that it is the best vehicle for offering the highest quality and most economical care to inmates.

Throughout our twelve (12) years of serving correctional customers, MDI has developed core values that mirror or complement those of the jurisdictions we serve. These core values include:

1. Successful development and maintenance of contractual agreements to provide the most cost-effective physician and facility services for both inpatient admissions and outpatient encounters for customer population groups;
2. Successful development of systems and procedures for receipt and review of provider billing and consolidation of billing for customer purposes in a timely and accurate manner;
3. Development of effective interpersonal relationships with customers and providers to ensure prompt response to customer medical service requests, prompt billing, current credentials, and continuity of care for inmates.

# Hospital Provider Network

## I. Facility Services

**San Joaquin Community Hospital** is a 178-bed acute-care hospital providing a broad range of clinical services including open-heart surgery, cardiology, stroke, neurology and dialysis, orthopedics, pulmonary, neurosurgery, state-of-the-art imaging services, preventative care, emergency services and more. It received full re-accreditation by the Joint Commission on the Accreditation of Healthcare Organizations (JCAHO) with an effective date of March 20th, 2004.



San Joaquin Community Hospital is a not-for-profit hospital located in Bakersfield and it has a 96-year tradition of meeting the healthcare needs of the residents of Bakersfield and Kern Counties, and surrounding areas.

With its capacity and scope of services, San Joaquin Community Hospital has a team of over 1,000 employees, 135 volunteers and 425 physicians working together to bring low-cost, high-value healthcare to you. It is located in Bakersfield at 2615 Eye Street and is approximately 44 miles from the California Correctional Institution. Additionally, San Joaquin Community Hospital is in the midst of building a 130,000 ft$^2$ tower which will: increase the number of beds in the hospital to 252 (80 percent of which are private rooms), double the size of the Emergency Department providing easier access for ambulance and walk-in patients, provide 8 new state-of-the-art surgery suites, and expand Intensive Care to 30 beds while adding a new 10-bed surgical ICU.



**Tehachapi Valley Healthcare District includes** a 24-bed acute-care hospital providing a range of clinical services including emergency services, radiology, ultrasound, clinical laboratory, respiratory therapy, and physical therapy. The hospital is located approximately 5 miles from the California Correctional Institution.

**Mobile Medical International Corporation:** Mobile Medical International Corporation [MMIC] was the first company to conceptualize, construct, customize and bring to market a series of mobile surgery and diagnostic facilities extending sophisticated yet cost-effective medical care to geographically remote patient populations. Mobile Medical International Corporation [MMIC] developed the concept of a mobile ambulatory surgery center and launched it into practical application during the early 1990's.



The launch of the first unit was followed by a year dedicated to comprehensive clinical trials and rugged evaluations by a variety of healthcare industry interests including the United States military, hospitals and other provider personnel. Today, there are numerous custom-designed MMIC mobile medical facilities in operation in various locations around the world. These units include mobile surgery units, mobile diagnostic units, mobile breast care centers, mobile laboratory and pharmacy units, mobile intensive care/patient recovery units, mobile ophthalmology units and more.

MDI envisions utilizing the mobile medical unit on rotation at both the California Correctional Institution and California State Prison Los Angeles County. Initially the unit would be placed adjacent to the institutions for 7 days at a time, respectively. This schedule could be changed over time to reflect usage trends and based on utilization.

MDI has also secured contracts with two Ambulatory Surgery Centers (ASC) to perform outpatient services in concert with the above hospital and Mobile Medical Networks. They are:

**Healthsouth Physicians Plaza Surgery Center**
6000 Physicians Blvd.
Bakersfield, CA 93301

**Regional Valley Surgery Center**
1720 West Avenue J
Lancaster, CA 93534

## Proximity of MDI Contracted Facilities to CDCR Institutions



Copyright © 1988-2003 Microsoft Corp. and/or its suppliers. All rights reserved. http://www.microsoft.com/mappoint
© Copyright 2002 by Geographic Data Technology, Inc. All rights reserved. © 2002 Navigation Technologies. All rights reserved. This data includes information taken with permission from
Canadian authorities © 1991-2002 Government of Canada (Statistics Canada and/or Geomatics Canada), all rights reserved.

**MDI Primary Hospital and Medical Service Network – List of Hospitals and Services Offered to CDCR**

| Hospital/Service | San Joaquin Hospital | Tehachapi Valley Health District |
|---|---|---|
| City | Bakersfield | Tehachapi |
| Beds | 178 | 25 |
| Airborne infection isolation room | X | |
| Angioplasty | X | |
| Cardiac catheterization lab | X | |
| Cardiac intensive care | X | |
| Cardiology services | X | |
| Case Management | X | |
| Chemotherapy | X | |
| Clinical Laboratory Services | X | X |
| Computed-tomography (CT) scanner | X | |
| Diagnostic radioisotope facility | | |
| Emergency Department | X | X |
| Extracorporeal shock-wave Litho | | |
| Hemodialysis Services | X | |
| Hospital-base outpatient care center | X | X |
| Linguistic/translation services | X | |
| Medical/surgical intensive care | X | |
| MRI | X | X |
| Multislice spiral computed TOMO | X | |
| Neurological services | X | |
| Oncology services | X | |
| Open-heart surgery | X | |
| Orthopedic services | X | |
| Spinal Surgery | X | |
| Outpatient surgery | X | |
| Pain Management Program | X | |
| SPECT Scan | X | |
| Ultrasound | X | X |

## II. Physician Services

MDI has contracted with 100 physicians with privileges at MDI-contracted facilities as well as ambulatory surgery centers. These physicians have all met the rigorous primary source credentials verification required by the Joint Commission on the Accreditation of Healthcare Organizations. In addition, the San Joaquin physician network has significant correctional health care experience as they are currently providing MDI services on other correctional health contracts in the area. The vast majority of these physicians are contracted with MDI on a Medicare/RVRBS methodology.

### Institution-Based Specialty Clinics

MDI will work with the individual C.I. staff to identify appropriate providers with privileges at MDI-contracted facilities to provide specialty clinics inside the prison facility. MDI will facilitate communication with the on-site providers on the type of cases that they will be seeing, in order to achieve the goal of treating as much as possible on-site at the DOC facility. MDI realizes that Institution-Based Services contribute significantly to maintaining the highest security for inmates while minimizing the disruption and cost associated with the provision of correctional officers to escort inmates to outside physicians and hospitals.

Examples of common specialty clinics provided by MDI to the Federal Bureau of Prisons are as follows:

> ➤ Cardiologist
> ➤ General Surgeon
> ➤ Orthopedic Surgeon
> ➤ Dermatology
> ➤ Obstetrician/Gynecologist

MDI will provide the Institution-Based contracted providers with current access to the CDCR's formulary. This information is available via MDI's secure web site.

**Contract Management and Financial Administration**

MDI has developed a custom claims processing system that effectively and efficiently adjudicates all claims for our clients. MDI's claims adjudication process is a combination of manual and software based eligibility checks, pricing, and submission invoice creation and is uniquely integrated into MDI's scheduling process.

The step-by-step representation of MDI's claims adjudication process outlined in Addendum B demonstrates how MDI uses our website to store, track, and retrieve patient encounter information from the beginning to the end of the encounter. The website is available for secure access by the CDCR C.I.s and can be used to monitor the following:

> ➢ Claims Status
> ➢ Scheduling of On-Site and Off-Site inmate visits
> ➢ Utilization Reports

Ms. Michelle Copenhaver has the authority to make decisions on the spot and brings to this contract a significant background in contract start-up and management between healthcare and correctional organizations. The experienced staff at MDI will support Ms. Copenhaver to resolve any issues that may arise.

The following core team will provide most of the day-to-day support for CDCR:

> ➢ Tracie Tesh, Regional Manager, Pacific Regional Office
> ➢ Michelle Copenhaver, Vice President Provider Services

Regional staff assists the Assistant VP in proactively identifying and solving customer issues, recruiting and maintaining provider credentials and relationships, and investigating claims received for specific inmate episodes of care.

As the Regional Manager, Tracie Tesh will be available by pager after normal business hours for any emergency consultations. In the event of any life-threatening emergency, Ms. Tesh will notify the CDCR of steps taken to abate the emergency within 24 hours or the next normal working day. Except for emergency cases, MDI will always obtain advanced approval from authorized CDCR medical staff prior to transferring inmates between medical facilities.

Upon contract award, Ms. Copenhaver will collaborate with the CDCR to schedule a start-up meeting with the CDCR and MDI-contracted service providers. This is a continual and customary practice for MDI, as it allows for the highest level of customer service.

### Pricing for California State Prison – Los Angeles County (Lancaster)

| Service | Rate |
|---|---|
| Outpatient Physicians | Medicare + 79 |
| On-site Mobile Medical Services (up to 21 cases) | $63,000 per month |
| Additional Mobile Medical cases > 21 cases/month | $2,625 per case |
| Surgically Implanted Devices used in Mobile Medical Unit | Cost plus 41% |
| Anesthesia Services (including pain management & injections) | 100% Billed Charges |

### Pricing for California Correctional Institute (Tehachapi)

| Service | Rate |
|---|---|
| Inpatient Facility – San Joaquin (Inpatient cases > $120,000 in billed charges will be billed at 60% of billed charges) | Medicare + 114 |
| Outpatient Facility – San Joaquin | Medicare + 129 |
| Inpatient Facility – Tehachapi Valley | 90% Billed Charges |
| Outpatient Facility – Tehachapi Valley | 90% Billed Charges |
| In/Outpatient Physicians – Urology, Ortho, Pathology (Anatomical), Infectious Disease, Ophthalmology, Neurosurgery | Medicare + 86 |
| In/Outpatient Physicians – ER, Radiology, Internal Medicine | Medicare + 114 |
| In/Outpatient Physicians – Cardiology | Medicare + 143 |
| Pathology Clinical Lab (based upon Clinical Lab Fee Schedule) | 23% Billed Charges |
| Pathology Clinical Lab – non-Medicare Codes | 71% Billed Charges |
| On-site Mobile Medical Services (up to 21 cases) | $63,000 per month |
| Additional Mobile Medical cases > 21 cases/month | $2,625 per case |
| Surgically Implanted Devices used in Mobile Medical Unit | Cost plus 41% |
| Anesthesia Services (including pain management & injections) | 100% Billed Charges |

# Addendum A – Example Consolidated Bill/Invoice

## CLAIM SUBMISSION: CDCR          Batch No.: FL-I-5012

| YREG #: | 5B210011 | | G Number: | | |
| Name: | JONES, BOBBY | | Patient Card Number: | 87654-321 | |
| Provider Name: | P HUGHES DO | | Claim Number: | 0000001 | |

| Beginning D.O.S | Procedure Code | Units | Claim Amount | Medicare Allow | CDCR Amount |
|---|---|---|---|---|---|
| 01/01/2005 | 99292 | 1 | $275.00 | $103.41 | $186.14 |
| **Claim Totals** | | | **$275.00** | **$103.41** | **$186.14** |

| YREG #: | 5B210011 | | G Number: | | |
| Name: | JONES, BOBBY | | Patient Card Number: | 87654-321 | |
| Provider Name: | MUNROE REGIONAL | | Claim Number: | 0000002 | |

| Beginning D.O.S | Procedure Code | Units | Claim Amount | Medicare Allow | CDCR Amount |
|---|---|---|---|---|---|
| 01/10/2005 | 132 | 1 | $10,584.65 | $3,535.40 | $5,904.12 |
| **Claim Totals** | | | **$10,584.65** | **$3,535.40** | **$5,904.12** |

| YREG #: | 5B210011 | | G Number: | | |
| Name: | JONES, JOHNNY | | Patient Card Number: | 98765-432 | |
| Provider Name: | MUNROE REGIONAL | | Claim Number: | 0000025 | |

| Beginning D.O.S | Procedure Code | Units | Claim Amount | Medicare Allow | CDCR Amount |
|---|---|---|---|---|---|
| 01/15/2005 | 127 | 1 | $15,562.52 | $5,714.50 | $9,543.22 |
| **Claim Totals** | | | **$15,562.52** | **$5,714.50** | **$9,543.22** |

| YREG #: | 5B210015 | | G Number: | | |
| Name: | JONES, JOHNNY | | Patient Card Number: | 98765-432 | |
| Provider Name: | R SANTO MD | | Claim Number: | 0000003 | |

| Beginning D.O.S | Procedure Code | Units | Claim Amount | Medicare Allow | CDCR Amount |
|---|---|---|---|---|---|
| 01/16/2005 | 43235 | 1 | $325.00 | $136.07 | $244.93 |
| **Claim Totals** | | | **$325.00** | **$136.07** | **$244.93** |

| | | |
|---|---|---|
| **Submission Totals:** | Claim Amount: | $26,747.17 |
| | Medicare Allowable: | $9,489.38 |
| | CDCR Amount: | $15,878.41 |

## Addendum B – Outline of Referral and Claims Process



## Addendum C – Benefits of MDI's Website to the CDCR

### MDI's Website

MDI's most unique service to the CDCR and its contracted providers is the development of a database for scheduling, billing, and reports to be accessed by the CDCR via the Internet. Customers can track significant amounts of specific inmate information and summary financial data by using MDI's secure web site (https://services.medint.com). Upon contract award, MDI will schedule a start-up meeting to facilitate communication between MDI, the CDCR, and MDI's contracted hospital. At this meeting or through videoconferencing or telephone conferencing, MDI staff will train CDCR staff to utilize the MDI website.

To gain access to MDI's website, each appropriate CDCR staff member will be assigned a unique login and password. MDI's website is secured by Entrust.net, which confirms the use of secure socket layer 128-bit encryption. This is currently the highest level of security available on the commercial market. Once login is accomplished, CDCR Customers can receive updated account information. Some of the features include:

- **Access to scheduling.** CDCR customers can view the daily provider and facility community-based services scheduled for inmates. Users can review schedules on a retrospective and prospective basis to determine historical and future patient events.
- **Escorted Trip Form.** CDCR customers can create, store, edit, and print escorted town trip forms tied directly to created appointments.
- **CPT and ICD-9 Codes with definitions.** MDI's website includes an option where a user can place their cursor over a procedure and diagnosis codes and the definition of this code will appear in a text box on the screen. This is a helpful feature when monitoring an inmate's case to determine if bills have been received for all expected procedures.
- **Medical Records.** After an appointment takes place the medical record generated by the physician or specialist is scanned in near-real-time to the website. Accessing the scheduling function allows immediate access to these notes, without waiting on a fax or the mail. An example screenshot of the access screen and medical record output are at the end of this section of the proposal.

MDI contracted providers will also have access to claims information via MDI's website. Provider staff will also be assigned unique log-ins and passwords to enable them to search submitted claims and estimated date of payment, including payment amount. This service eliminates a great deal of time that provider's offices spend in telephone calls, letters and faxes of claims inquiry. This service will be accessible 24 hours a day, and should answer most claim questions from providers.

## Example Scheduling and Medical Record Output Screenshot

| MEDICAL DEVELOPMENT INTERNATIONAL | | | | CLIENT SITE DEMO | | |
|---|---|---|---|---|---|---|
| SCHEDULE | APPOINTMENTS | CLAIMS | REPORTS | | LOGOUT | |

**Calendar**

| Month | | | Thursday, March 02, 2006 | | Region | ALL OFF-SITE |
| Select Month | | | | | Specialty | All Specialties |

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| 26 | 27 | 28 | Mar 1 | 2<br>10:00 AM (111)<br>LAST, FIRST [M] | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |

MEDICAL CENTER
DEPARTMENT OF RADIOLOGY

CONF USP MDI,                                    ORDERING DR:
PERM#:                          DOB:
EXAM:   US RENAL/AORTA COMP
TYPE:   O                       US
STAY#:                          EXAM DT: 02/01/2006

IMPRESSION:
1.  2.4 CM CYST IN THE MID POLE OF THE LEFT KIDNEY.

2.  OTHERWISE UNREMARKABLE STUDY.

FW/jc
Exam:   US RENAL/AORTA COMP
RENAL ULTRASOUND

HISTORY:

Renal insufficiency.

FINDINGS:

Sonographic images show a right renal size of 10.4 x 5.8 x 5.0 cm.
The left kidney measures 10.8 x 7.0 x 4.8 cm.

## **Website Reports**

There are many reports that can be accessed directly by the CDCR staff at any time via MDI's website. These reports have been developed specifically for MDI customers to assist them in performing quality assessment, timeliness, and cost control reviews. Additional reports can be run at the request of the CDCR. Some of these reports are as follows:

- **Utilization Reports.** Customers can review utilization by claim type, or on an individual patient's history. Having access to these types of reports can clearly indicate a patient's status and medical history while under MDI's care.

- **Number of Patients per Facility.** With this report, the CDCR administration (e.g. HSA, Clinical Director) can track performance by provider. This report may be helpful in making staffing decisions and to monitor referral patterns. On a regional level, the RHSA can monitor referral patterns by institution.

- **Number of Events by CPT Code.** This report is valuable to the CDCR and to the regional administrator in determining both equipment and staffing needs and can provide guidance in obtaining institutional expertise (e.g. getting a second opinion for orthopedics or cardiovascular surgery before approving expensive, invasive procedures). Further, this report can help identify institution specific causative factors. For example, an inordinately high number of knee x-rays may indicate a problem on the recreation field such as gopher holes or programs such as "touch" football may lead to frequent sports injuries.

- **Quality Assurance Report.** This report provides information about the timeliness of care, performance of preparation procedures, completion of patient education, and measures of efficiency for both staff time and equipment time. This report is useful on both an institutional and regional level since it is a good indicator of the efficiency of the facility clinics and the actual follow-up for procedures ordered.

- **Number of Patients Seen per Session.** This report can serve as a good tool for adjusting the scheduling of both institution and clinical staff, determining needed staffing patterns for consultants and institution support staff and for monitoring referral patterns.

- **Number of No Shows per Session.** This report serves as a general indicator of clinic organization and management. It can be a helpful tool to the clinic administrator in identifying and solving "patient flow" problems.

- **Number of Cancelled/Rescheduled Appointments.** These reports offer a clear measure of timeliness of care and the general organization of outside medical appointments.

## Privacy Rules under the Health Insurance Portability and Accountability Act (HIPAA)

MDI is committed to improving the efficiency and effectiveness of electronic information transfers used in the provision, management, and financing of health care in compliance with the privacy provisions of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). The U.S. Department of Health and Human Services (HHS) has issued its Final Rule for protecting certain health information and is expected to promulgate regulations to implement that Rule.

Much of the data gathered, analyzed, and transmitted by MDI is "individually identifiable health information" or demographic information that is "(1) created by or received by a provider, plan, or clearinghouse; and (2) related to an individual's past, present, or future physical or mental health or condition, the provision of care to the individual, or the past, present, or future payment for such care and that identifies the individual or where there exists a reasonable basis to believe the information can be used to identify the individual" and is protected health information (PHI) under HIPAA. It is MDI's policy to _only_ use or disclose PHI, without additional authority, to carry out treatment, payment, or health care operations. Furthermore, it is MDI's policy regarding disclosure of PHI for payment or health care operation purposes, to disclose only the minimum PHI necessary to effectuate those functions.

MDI has taken significant steps to ensure that it receives, stores and communicates PHI in a manner consistent with HIPAA and the Final Rule. In addition, MDI has implemented an ongoing HIPAA privacy compliance strategy that will monitor HHS rulemaking actions so that MDI can make changes and modifications to its operations in response to forthcoming HHS regulations.

As a means of operationalizing the HIPAA process to ensure compliance, MDI has established a HIPAA team as a subcommittee of the company's executive management committee. The HIPAA team consists of key individuals from the following MDI divisions:

- o Information Systems (lead responsibility);
- o Finance/Accounting;
- o Member Enrollment;
- o Claims;
- o Marketing;
- o Operations (contract management, provider liaison); and
- o Legal Counsel

MDI has reviewed and modified its policies and procedures related to privacy and confidentiality, technical security measures and the general handling and access to PHI to ensure that they are consistent with HIPAA. Those revised policies and procedures have

been communicated to all employees and are readily available to them in the employee manual. MDI has made substantial progress in implementing administrative, technical, and physical safeguards to protect PHI from improper use and disclosures.

MDI has implemented a company wide training program to ensure that all employees are familiar with MDI privacy policies and procedures. All new hires will receive training on privacy policies and procedures as part of their orientation.

MDI has established a system for employees to receive and/or report privacy complaints and a rapid response to investigate potential or alleged breaches. In addition, MDI is developing policies that address measures to be taken against employees or business associates who breach privacy policies.

MDI has reviewed all of its business relationships and contracts to ensure that it has "satisfactory assurance" that the contractor, provider, or vendor will: (1) appropriately safeguard PHI; (2) allow only authorized disclosure of PHI; (3) make PHI available for amendment and auditing of disclosures; (4) adhere to reporting requirements regarding improper use or disclosure of PHI; and (5) require agents or subcontractors who receive PHI to also comply with the restrictions.

MDI has implemented a system to enable authorized individuals, in accordance with HIPAA, to access, inspect and copy PHI within 30 days of a proper request; and to provide within 60 days of a proper request an amendment of PHI or accounting of non-routine PHI disclosures made by MDI.

MDI has identified Matthew Richards, Vice President, to serve as the MDI Privacy Officer. MDI's Privacy Officer will be responsible for making determinations on (1) situations that require a consent or authorization; (2) MDI employee access, use and disclosure of PHI information within the "minimum necessary" rule; and (3) breaches of contractual obligations for business associates. The Privacy Officer will also coordinate the auditing and monitoring activities, to include ongoing training as needed, to ensure the full implementation of MDI's health information privacy standards and procedures.

**EXHIBIT C**

MAR-14-07 08:20 AM  OCCUPATIONAL/HEALTH      661 __5 0768        P.01

MAR. 12 2007 07:14PM 2699-WBS-EFB  Document 85-LA Filed 10/17/07  Page 24 of 35  1/1 01
Case 2:07-cv-02699-WBS-EFB   Document 85-LA Filed 10/17/07   Page 24 of 35

attn. Rose Hess        Attn: Glend Gourdine

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS                                              ARNOLD SCHWARZENEGGER, Governor



## California State Prison – Los Angeles County
44750 60th Street West
Lancaster, CA 93536-7620
(661) 729-2000

March 8, 2007

Antelope Valley Hospital                Lancaster Community Hospital
Administration                          Administration
1600 West Avenue J                      43830 N. 10th Street West
Lancaster, CA  93534                    Lancaster, CA  93534

The following is a list of physicians and/or groups with which California State Prison - Los Angeles County
has contracted for patient services.  Please refer our patients to the following physicians or groups.

| SERVICE | PHYSICIAN OR GROUP | PHONE NUMBER |
|---|---|---|
| Ambulance: | American Medical Response | 661-947-2173 |
| Anesthesiology: | Anesthesia Partners of North Valley | 818-845-6206 |
| *Cardiology/Internal Medicine: | Heart Center - Drs. Anil Kumar, K. Gill, Khanal | 661- 940-0535 |
| | Valley Cardiology – Dr. Ernest | 661- 948-2621 |
| Gastroenterology: | Sierra Gastroenterology – Drs. Wong, Moorthy | 661- 945-1874 |
| Hematology/Oncology: | Valley Tumor Med Grp – Drs. Miller, Kaminski, Shah | 661- 948-5928 |
| Nephrology: | Antelope Valley Nephrology – Drs. B. Hadaya, Yang, Dahhan | 661- 948-1388 |
| Neurology: | Antelope Valley Neuroscience – Dr. Janumpally | 661-945-6931 |
| | Vijay Shanmugan, MD | 661-726-9220 |
| Oral Surgery: | Ralph Waugh, DDS | 661-948-5061 |
| Orthopedics: | Lee Orthopedic Institute-Drs. C. Lee, D. Lee | 661-948-5001 |
| Physical Medicine: | Kalpana Ravikumar, MD | 661-945-4563 |
| Pulmonology: | Antelope Valley Lung Institute – Drs. Damle, Nathan | 661-945-8717 |
| | Antelope Valley Pulmonary – Dr. Krishna | 661-726-6600 |
| Surgery: | James A. Larson, MD & Jose Gordo, MD | 661-942-6565 |
| Vascular Surgery: | AV Surgical Associates – Drs. Mahendra, Petrik | 661-945-4433 |

**\*FOR ALL INPATIENT ADMISSIONS, PLEASE CONTACT THE HEART CENTER OF THE ANTELOPE VALLEY MEDICAL GROUP, DOCTORS A. KUMAR, GILL AND KHANAL.**

Thank you for your help in this matter.  If you have any questions or concerns regarding this information,
please feel free to call me at (661) 729-2000 extension 7032.

T. Bzoskie, MD
Chief Medical Officer
California State Prison - Los Angeles County

cc:     AV ER, LCH ER        Admissions
        Business Office      Patient Care Evaluation

**EXHIBIT D**

# MASTER AGREEMENT
## FOR
## MEDICAL MANAGEMENT CONSULTATION
## AND
## PROVIDER NETWORK SERVICES

**THIS MASTER AGREEMENT** is made and entered into this 1st day of December 2006 by and between **Premier Physician Alliance Inc. ("PPA")**, a California professional corporation and **Medical Development International ("MDI")**, a Florida Corporation.

**WHEREAS**, the California Department of Corrections and Rehabilitation (CDCR) desires to utilize MDI's administrative services while preserving the integrity of the federal-model in delivering health services to CDCR inmates.

**WHEREAS**, CD\.  .requires that a prime contract exist with a licensed medical corporation, MDI sh\.  contract with PPA to insure such licensed medical corporation is utilized and that such i\. ensed medical corporation is identified as PPA for purposes of this Master Agreement. ·  ,

**WHEREAS**, PPA is a licensed California medical corporation doing business in California and which desires to provide certain medical management services for certain classes of individuals (herein called patients) in accordance with MDI's administrative services agreements and obligations with specific respect to the CDCR and

**WHEREAS**, MDI is a company active in contracting with the CDCR to arrange for comprehensive health and medical services for CDCR correctional facility clients; and

**WHEREAS**, MDI agrees to secure medical management consultation services from PPA for CDCR inmate patients scheduled for medical care and treatment through MDI. Any and all medical care and treatment provided through MDI shall be rendered by MDI and PPA contracted community based healthcare providers.

**NOW THEREFORE**, for and in consideration of the mutual promises and covenants hereinafter contained, and subject to the conditions contained herein set forth, the parties hereto covenant, agree, and bind themselves as follows:

The parties desire to establish a Master Agreement whereby certain medical management services may be ordered and performed on behalf of the CDCR inmate patients through mutually agreeable terms as described in this Master Agreement. MDI from time to time may at its sole discretion make agreements with the CDCR to add additional correctional facility locations. Such locations shall be herein identified as project locations. Any such specific project locations shall be added upon mutual consent by both parties and made effective by written supplemental agreement(s) to this Master Agreement. Project locations are set forth in Exhibit A. of this Master Agreement.

## ARTICLE I
## PPA'S RESPONSIBILITIES

1.1     PPA shall act as the prime contractor, where able, for physician, ancillary and facility health care services contracted for the benefit of the CDCR administered by MDI. PPA will assist MDI in the recruitment and retention of healthcare providers. MDI shall make available upon request by PPA or Administrative staff resources to PPA as necessary to facilitate the contracting process and maintain the provider network.

1.2     PPA shall submit any and all claims invoices submitted by subcontractors or providers to PPA for the rendering of medical treatment and care for CDCR inmate patients to the MDI in a timely fashion.

1.3     PPA shall provide mutually agreed upon medical management services for CDCR inmates in accordance with MDI's administrative services agreements and obligations with specific respect to the CDCR.


## ARTICLE II
## SCOPE OF MDI SERVICES

2.1     MDI shall coordinate and integrate the delivery of medical services of PPA's subcontractors and/or network of providers for the performance of CDCR health and medical services available hereunder.  MDI shall provide any and all necessary resources to arrange for, contract with and maintain necessary contracts with healthcare providers and subcontractors, to meet the medical needs of each individual CDCR correctional facility location as set forth in this Master Agreement and each Supplemental Agreement in compliance with community standards.

2.2     The parties recognize and agree that MDI is the third party administrator (TPA) and will act as the billing agent and TPA intermediary for services rendered by all providers and subcontractors to CDCR inmates.

A.) MDI shall process and submit any and all such claims submitted by any PPA subcontractor or provider, for the rendering of medical treatment and care for CDCR inmate patients, to the CDCR in a timely fashion in accordance with state and or federal laws and statutes as applicable.

B.) MDI shall be responsible for claims payment to the PPA subcontractors and providers in accordance with state and or federal laws and statutes as applicable and in accordance with the payment terms of the individual subcontractor and provider agreements.

C.) MDI agrees herein to submit any and all payments directly to PPA's subcontractors or providers for services provided pursuant to this Master Agreement in accordance with state and or federal laws and statutes as applicable and in accordance with the payment terms of the individual subcontractor and provider agreements.

2.3    MDI shall provide a system of centralized billing for subcontractors and contracted provider services and will submit subcontractor and provider claim invoices directly to the CDCR for services rendered in accordance with any and all state and or federal laws and statutes as applicable. MDI will be responsible for disbursing payment directly to subcontractors and contracted providers in accordance with the payment terms of the individual subcontractor and provider agreements...

2.4    MDI will manage medical record information in a manner, which promotes continuity of care while observing all HIPAA requirements

2.5    MDI will maintain open avenues of communication, facilitating the exchange of information between PPA contracted subcontractors and providers and the CDCR correctional institutions regarding healthcare services.

2.6    MDI's services shall consist of the TPA services outlined herein in addition to, the arrangement of comprehensive medical and health services described in each Supplemental Agreement with respect to each individual CDCR facility.

2.7    MDI's services shall include provider network development, patient scheduling, claims processing adjudication, utilization management, and in-servicing of all contracted subcontractors and providers. MDI shall coordinate and make available to PPA any and all reports, resources and on-line information to assist PPA in the provision of medical services delivery to CDCR inmates needing medical care. Access to any and all information will be granted to PPA by MDI where required to perform the duties and responsibilities of the Master Agreement.

## ARTICLE III
## COMPENSATION

$825,000/yr-

3.1    MDI will pay PPA for medical management services the sum of fifty thousand dollars ($50,000) per annum within thirty (30) business days following the execution of this Master Agreement. This fifty thousand dollars ($50,000) will cover the services outlined in this agreement and provided by PPA to MDI for CDCR correctional facilities located in the cities of Tehachapi and Lancaster, California. Should the CDCR add additional facility locations under this Master Agreement, MDI shall pay an annual fee to PPA of twenty-five thousand dollars ($25,000) per facility location within thirty (30) business days of each such location addition. These additional facility locations shall be added via Supplemental Agreements to this Master Agreement.

3.2    This Master Agreement and any amended supplemental agreement(s) shall automatically renew one year from the date of the execution of this Master Agreement. Both parties thereafter shall mutually agree to all such renewals in writing, and upon such renewal, payment will be made by MDI to PPA in monthly installments of five thousand dollars ($5,000.00) for each CDCR facility location held under contract with MDI until such time as the per facility location per annum fee of twenty-five thousand dollars ($25,000.00) is attained. Each monthly installment will be due by the fifteenth (15th) business day of the month. All locations for which MDI shall provide PPA with payment shall be identified in Exhibit A of this Master Agreement.

## ARTICLE IV
### INDEPENDENT RELATIONSHIP

4.1    None of the provisions of this Master Agreement are intended to create any relationship between MDI and PPA other than that of independent entities contracting with each other solely for the purpose of effecting provisions of this Master Agreement. None of the parties hereto nor any of each party's respective employees shall be construed to be the agent, employee, partner, joint venture or representative of the other party.

## ARTICLE V
### INDEMNIFICATION

5.1    PPA shall indemnify, defend and hold MDI, its trustees, officers, directors, employees and agents harmless from and against any and all demands, claims, causes of action, damages, costs, expenses (including without limitation attorneys fees and costs) and other liabilities asserted or claimed by any person, arising out of or related to PPA'S performance of any term or condition hereof.

5.2    MDI shall indemnify, defend and hold PPA, its trustees, officers, directors, employees and agents harmless from and against any and all demands, claims, causes of action, damages, costs, expenses (including without limitation attorneys fees and costs) and other liabilities asserted or claimed by any person, arising out of or related to MDI's performance of any term or condition hereof.

## ARTICLE VI
### CONFIDENTIALITY OF PROTECTED HEALTH INFORMATION

6.1    All medical records of inmates for whom MDI arranges services for under the terms of the prime contract between the CDCR and MDI (hereinafter "Covered Person") shall be treated as confidential so as to comply with State and Federal laws and regulations regarding the confidentiality of patient records.  The medical records of each

Covered Person shall be treated as confidential in the same manner as other patient records.

6.2    MDI and PPA agree to treat as confidential all protected health information (hereinafter "PHI") received for patients. PHI is information that concerns an individual's past, present, or future physical or mental health or health related condition, the provision of care to the individual, or the past, present, or future payment for such care and that identifies the individual or where there exists a reasonable basis to believe the information can be used to identify the individual. MDI and PPA further agree that neither party shall not disseminate, disclose, or otherwise use PHI in a manner inconsistent with the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and the Final Rule as published in the December 28, 2000 Federal Register, 65 Fed.Reg. 82462 (Privacy Standards) and as modified in the supplement to the Final Rule as published in the August 14, 2002 Federal Register, 67 Fed.Reg. 53812. MDI and PPA agree to make PHI available for review and; adhere to HIPAA auditing and reporting requirements regarding improper use or disclosure of PHI; and require agents and subcontractors who receive PHI to also comply with the HIPAA Privacy Standards.

## ARTICLE VII
## MASTER AGREEMENT AND
## SUPPLEMENTAL AGREEMENT
## RENEWAL

7.1    The Master Agreement and the supplemental agreement(s) between MDI and PPA shall remain in force with mutual agreement of the parties as long as the prime contract(s) between the CDCR and MDI are in force or until such time as PPA no longer provides MDI authorized medical management services on behalf of the CDCR.

7.2    This Master Agreement and any amended supplemental agreement(s) shall automatically renew, for successive one (1) year terms respectively should the prime contract(s) between the CDCR and MDI continue in force and effect.

## ARTICLE VIII
## TERM, TERMINATION AND SUSPENSION

8.1    This Master Agreement or any individual CDCR correctional facility t location pursuant to a supplemental agreement may be terminated by either party without cause by either party upon not less than one hundred twenty (120) days written notice to the other party.

8.2    This Master Agreement or any CDCR correctional facility location pursuant to a supplemental agreement may be terminated by either party for cause with forty-five (45) days written notice being given to the other party for non-payment as required by the agreement.

8.3     All individual facility contracts pursuant to a supplemental agreement shall terminate automatically upon the termination of this Master Agreement.

8.5     This Master Agreement and supplemental agreements shall automatically terminate upon termination of the prime contract between the CDCR and MDI. MDI shall use best efforts to notify PPA with ninety (90) days prior written notice of an impending termination by the CDCR.

8.6     Termination shall have no effect upon the obligations of the parties arising out of any services provided prior to the effective date of such termination. Termination of this Master Agreement or any individual facility contract location under a supplemental agreement shall not affect MDI'S obligation to pay for services authorized by MDI and provided by PPA.

8.7     Either party may terminate this Master Agreement immediately if the other party (i) becomes or declares that it is insolvent or bankrupt; (ii) becomes or declares that it is the subject of any bankruptcy proceedings or any proceedings related to its liquidation or insolvency; or (iii) ceases to do business.

## ARTICLE IX
## PROTECTION OF TRADE SECRETS AND NON-DISCLOSURE

9.1     Both parties understands and acknowledges that, by entering into this agreement, Both Parties will gain access to each others trade secrets, valuable confidential business information, and extraordinary or specialized training held by each party.. Both parties understand and acknowledge that each party has invested considerable resources in creating and maintaining its network of specialized providers (the "Network"). Both parties agree that they will not publish, divulge, disclose, or make known to any third party in any manner either during performance or after the termination of this Master Agreement each parties trade secret or confidential business information except as is necessary solely for the performance of its obligations under this Master Agreement. Both parties "trade secret" or "confidential business information" means the whole or any portion or phrase of any formula, process, operation, style of work, pattern, device, combination of devices, or compilation of information which is used in the operation of both parties business, and includes any list of providers, list of customers, business codes or software, and any information on pricing, income, expenditures, profits, and/or losses.

9.2     Both parties further understand and acknowledges that each party has a legitimate business interest in protecting such secrets, information, training, and network from its competitors or their representatives, that each party's violation of this provision may cause irreparable harm to either party and/or the network, and that the scope of the aforementioned non-disclosure agreement is no greater than reasonably necessary to protect both parties aforementioned legitimate business interests. Both parties further

agree to reimburse the other party for all reasonable attorney's fees incurred by either party in enforcing this provision.

9.3    Except as necessary for performance of this Agreement, neither party shall disclose the information set forth in this Master Agreement or any supplemental agreement. Moreover, neither party shall disclose any information obtained or developed in the performance of this Master Agreement without the prior written consent of the other party. Each party shall endeavor to protect the other party's confidential and proprietary information so as to avoid disclosure to any third party except as required by law, judicial or administrative process or to appropriate regulatory authorities. The provisions of Article IX shall survive expiration or termination of this Master Agreement.

**ARTICLE X**
**DISPUTES**

10.1    If a dispute arises out of or relates to this Agreement or its terms, the parties agree to confer in good faith to resolve any such dispute either by the negotiation of the parties' Chief Executive Officers or, if the parties otherwise mutually agree, by mediation.

10.2    If the dispute cannot be resolved by negotiation or mediation, the dispute shall be resolved by binding arbitration before the American Arbitration Association ("AAA"). The dispute shall be submitted to a sole arbitrator, whose decision shall be final and binding on the parties. The parties shall elect the arbitrator by mutual agreement or, if the parties fail to agree upon an arbitrator within thirty (30) days from the date of election to arbitrate, the arbitrator shall be selected in accordance with AAA's standard rules for commercial disputes. AAA's Commercial Arbitration Rules shall govern the arbitration. The parties shall bear their own costs associated with the arbitration, and shall share equally the costs of the arbitrator. In the event that either party fails to comply with the terms of the arbitrator's final decision, either party may petition a court of competent jurisdiction to enter a judgment based upon the arbitrator's final decision. The parties, their representatives, other participants and the arbitrator shall hold the existence, content and result of the arbitration in confidence. The arbitrator shall not limit, expand, or otherwise modify the terms of this Agreement or award any exemplary or punitive damages or attorney's fees except for any fees that are otherwise contemplated elsewhere in this Agreement.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

11.1    Any notice to be given pursuant to the terms and conditions hereof shall be in writing and shall be sent by certified mail, return receipt requested, postage prepaid, or Federal Express, signature required, to the following address:

**Notice to MDI:**

> Medical Development International
> Corporate Office
> 822 Highway A1A, Suite 310
> Ponte Vedra Beach, Florida 32082

> Attention: Ms. Staci Brown, Vice President Finance & Administration

**Notice to PPA:**

> Premier Physician Alliance
> 2701 Chester Avenue
> Bakersfield, CA. 93303

> Attention: Jeffery Freesemann M.D., President

11.2   This Master Agreement along with any and all supplemental agreements shall constitute the entire understanding between PPA and MDI and no changes, amendments or alterations shall be effective unless agreed to in writing by both parties.

11.3   Each supplemental agreement shall be considered an amendment to this Master Agreement and shall be signed by both parties in order to become effective.

11.4   This Master Agreement shall not be assigned or transferred by either party without the prior written consent of the other party.

11.5   Should any provision of this Master Agreement or any supplemental agreement be declared or be determined by any court of competent jurisdiction to be illegal or invalid, the parties expressly intend for the court to reform or modify said illegal or invalid provision to comport with applicable law.  In the alternative, the parties expressly intend for said illegal or invalid part, term or provision to be stricken and not to be a part of this Agreement.  Under no circumstances will the validity of the remaining parts, terms or provisions be affected by any such illegality or invalidity.

11.6   The waiver of any breach of this Master Agreement or any supplemental agreement by either party shall not constitute a continuing waiver of any subsequent or ongoing breach of either the same or any other provision of the Master Agreement or supplemental agreement.

11.7   This Master Agreement may be executed in counterparts and the counterparts read together as one Agreement.

11.8   This Master Agreement and any supplemental agreement shall be construed in accordance with the laws of both the State of Florida and California

**IN WITNESS WHEREOF,** the undersigned have caused their respective duly authorized representatives to execute this Master Agreement as of the day and year first above written.

**Premier Physician Alliance**          **Medical Development International**

By:_____          By:_____

Name:_____          Name:_____

Title:_____          Title:_____

## ATTACHMENT A

1) Tehachapi Corrections Facility, Tehachapi, CA.

2) Los Angeles County Corrections Facility (LAC), Lancaster, CA.