# EXHIBIT 8
# (part 3)

**EXHIBIT E**

**WALSH LAW FIRM**

ATTORNEYS AT LAW

JAMES R. WALSH
JWALSH@WALSH-LAW.COM

3443 GOLDEN GATE WAY, SUITE F
LAFAYETTE, CALIFORNIA  94549

WWW.WALSH-LAW.COM
FACSIMILE: (866) 406-8863

TELEPHONE: (925) 284-7400

March 7, 2007

<div style="border:1px solid black">

# Walsh Law Firm
# Client Copy

</div>

Martin H. Dodd, Esq.
Futterman & Dupree LLP
160 Sansome St 17FL
San Francisco, CA 94104

> Re:   **Medical Development International**
>        **Walsh Law File No. 1034**

Dear Mr. Dodd:

We have been retained by Medical Development International (MDI) to respond to concerns that you may have that the subject contracts may run afoul of the laws and regulations concerning the corporate practice of medicine and the practice of medicine without a license. I am working with Timothy Heffernan of Watt, Tieder, Hoffar & Fitzgerald on this matter.

This letter will (1) briefly outline MDI's business, and (2) respond to the suggestions that these arrangements are improper or illegal under California Law.

### 1.    Introduction.

MDI is a privately held corporation headquartered in Ponte Vedra Beach, Florida and has been serving the correctional community for over 12 years.  MDI has proven that they are the answer to the access to care issues plaguing the CDCR and we believe strongly that the CDCR staff, if given the most advanced tools and quality referral network can provide Californians the best value for their tax dollar.

MDI is a corporation specializing in the development of hospital and physician networks to serve correctional customers.  These healthcare networks serve as the primary referral network for the clinical staff within the correctional institution and is supported by the most advanced health information system available to the correctional field.

This model was originally designed by the Federal Bureau of Prisons (FBOP) over twelve years ago to provide its healthcare staff within the individual institutions with a

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 2

specialty referral network. This model requires a single contractor provide the following services:

- ❑ Develop a referral network for in and outpatient facility services
- ❑ Develop a referral network for in and outpatient specialty physician services
- ❑ Provide a centralized scheduling system
- ❑ Provide a centralized billing system
- ❑ Facilitate the flow of medical information between the correctional facility health services staff and the services delivered within the referral network

MDI has been the leader in delivering these services to the FBOP currently serving over 40% of the contracts covering over 80,000 inmates. In addition, MDI serves state and local governments through a contract with the largest private correctional services company to bring the total inmate population to over 120,000 individuals.

The hallmark of this model is based upon the assumption that the individuals within the correctional facility are capable of providing quality services at the standard of care within the community but that administrative tools from the private sector are needed to support this task. This successful model has been in place for over 12 years and during that time MDI has saved the FBOP millions of dollars while providing the tools necessary for the institutions to deliver quality care. This public/private partnership was once again proven at the CDCR facilities located in Tehachapi and Lancaster where CDCR staff proved that they could deliver care in compliance with *Plata* if provided the administrative tools and referral network.

## 2. MDI's California Business.

MDI has entered into two contracts with California prisons, California Correctional Institution at Tehachapi and California State Prison, Los Angeles. These contracts are simple and straightforward and have been in place since 2006. The results under the contractual arrangements have been spectacular.

Basically, MDI enters into an agreement to provide administrative and logistical support to the now existing in-house medical staff at the prison. What does MDI do?

- ❑ MDI enters into agreements with physicians and hospitals whereby those physicians and hospitals agree to perform medical services at the request of the prison medical staff.
- ❑ MDI works closely with the prison medical staff to provide the framework for excellent, coordinated medical case at a reasonable cost.

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 3

- ❑ If an inmate is in need of specialist treatment and such is ordered by medical director, then MDI will set up the appointment with one of the physicians in its network and handle all of the scheduling, logistics and billing requirements.
- ❑ If there is no qualified physician that meets the prison's criteria, then MDI will try to find such a physician and make the physician a part of the network.
- ❑ If there is no qualified physician who is a part of the network and one cannot be found, then MDI will simply handle the logistics and scheduling.
- ❑ All medical decisions initiating the process are made by the prison physician.
- ❑ All medical decisions regarding tests, treatment and the like are made by a licensed specialist.
- ❑ MDI is not involved in any medical decisions.

### 3. MDI Is Not Engaged in Practice of Medicine, Corporate or Otherwise.

#### a. The Unlicensed Practice of Medicine.

It has been suggested that MDI and/or its staff may be practicing medicine without the being licensed as required by Business and Professions Code §2052. This statute requires that any person who practices "any system or mode of treating the sick or afflicted in this state, or who diagnoses, treats, operates for, or prescribes for any ailment, blemish, deformity, disease, disfigurement, disorder, injury, or other physical or mental condition of any person" have a valid license. "To bring a person within the provisions of the act, it must appear that he practices, or attempts to practice medicine, etc., as a business or calling, or advertises, or holds himself out as so doing..." *Ex parte Greenall*, 153 Cal. 767, 770 (1908).

As discussed in detail above, MDI's services do not in any way involve the professional decision-making that constitutes the practice of medicine. It is the prison physician who determines the need for medical intervention and the specialist who establishes the system or mode of treating the patient. MDI only schedules appointments ordered by the physician. Further MDI does not diagnose anyone, only the treating physician does that. Nor does MDI prescribe any test — all that MDI does is facilitate the scheduling of tests and diagnostic tools *already prescribed by the physician*. Further, MDI plays no role whatsoever in the diagnosing of any kind of disease or injury. All of the medical decisions made regarding the patient are made either before MDI's involvement or after.

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 4

### b. Corporate Practice of Medicine.

The corporate practice of medicine is barred by California Business and Professions Code §2400 et seq. That statute provides that "[c]orporations and other artificial legal entities shall have no professional rights, privileges, or powers..." The principal purpose of Section 2400 is "to protect the professional independence of physicians and to avoid the divided loyalty inherent in the relationship of a physician employee to a lay employer." *California Medical Ass'n v. Regents of University of California*, 79 Cal. App. 4th 542, 550 (2000). The statute is meant to "ameliorate 'the evils of divided loyalty and impaired confidence' which are thought to be created when a corporation solicits medical business from the general public and turns it over to a special group of doctors, who are thus under lay control." *Conrad v. Medical Bd. of California*, 48 Cal. App. 4th 1038, 1042-1043 (1996) (quoting *People v. Pacific Health Corp.*, 12 Cal. 2d 156, 159 (1938)).

The test for corporate practice is whether the professional independence of the physicians has been compromised and whether there exists a "secondary and divided loyalty to the patient." *Steinsmith v. Medical Board of California*, 85 Cal.App.4th 458, 466 (2000). Where this divided loyalty and control does not exist, there is no corporate practice of medicine.

The Medical Board of California has provided some guidance in this area by publishing its *Perspective to Provide Guidance on the Prohibition Against the Corporate Practice of Medicine* (January, 1999). It stated that the fundamental policy behind Section 2400 is to prevent "unlicensed persons from interfering with or influencing the physician's professional judgment." The publication then specified a non-inclusive list of decisions that should always be made by a licensed physician, including determining which diagnostic tests are appropriate, and decisions regarding the ultimate overall care of the patient.

None of the factors for determining whether a business is engaged in the corporate practice of medicine listed in the Medical Board's *Perspective* have been met

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 5

here. The following chart lists the factors followed by an explanation of why MDI's practices do not meet the definition:

| Factor | MDI's Role |
|---|---|
| 1) Determining what diagnostic tests or treatment are appropriate. | 1) Only the prison physician determines which tests or specialists are appropriate. MDI plays no part in this decision. |
| 2) Determining the need for referral to or consultations with another physician/specialist. | 2) MDI simply never advises a physician or patient on the need for referrals. This is done by the prison medical staff. |
| 3) Responsibility for the ultimate overall care of the patient, including treatment options. | 3) The treating physician retains all responsibility for the ultimate care and treatment options for the patient. MDI makes no decisions regarding either. |
| 4) Determining how many patients a physician must see in a given period or how many hours a physician must work. | 4) MDI does not in any way influence a physician's number of patients or working hours. |
| 5) Ownership of patient's records. | 5) MDI acts only as a ministerial messenger for patient records, only forwarding prescriptions and test results to the appropriate parties. Ownership is always retained by the treating physician and the prison. |
| 6) Selection of professional staff. | 6) MDI has no role in the selection of either the prison physician or what specialist should be consulted. MDI does have a network of physicians. |
| 7) Decisions regarding the coding and billing procedures for patient care services. | 7) MDI does not make decisions for coding and billing. However, MDI does check for accuracy and consistency. |
| 8) Approval of the selection of medical equipment for the practice. | 8) MDI has no role in the selection of the tests or the machines to be used. This is done by the prison doctor and any referred specialist. |

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 6

### C. The 1991 Future Diagnostics, Inc. Litigation.

This precise issue was brought up before the Medical Board in 1991 in the case of *Future Diagnostics, Inc.*

In an opinion letter dated August 2, 1991 from Mr. Jeff Marschner, of the Legal Affairs Division of the Department of Consumer Affairs, the jurisdiction of which includes the Medical Board of California, addressed the issues involved here. A copy is enclosed. The opinion is addressed to an attorney representing Future Diagnostics, Inc. ("FDI"). FDI was a management services organization engaged in the same business with a very similar business model as MDI. As you can see from the letter, the Legal Affairs Division issued an opinion that FDI's practices did not constitute the corporate practice of medicine. Rather, the legal conclusion of the division was that FDI's role was analogous to "that of a 'messenger' or intermediary in a relationship between insurers and a preferred provider organization."

This opinion was correct as a matter of law -- FDI was not engaged in the corporate practice of medicine in 1991.

Even independent of the correctness of this legal opinion, the fact that the Legal Affairs Division issued this opinion over fifteen years ago to an industry that has saved the state of California millions of dollars in the intervening period certainly creates a justifiable reliance and a legal presumption that would be very difficult to overcome.

### D. The 2003 Workers Comp Litigation Again Raised And Dismissed Such Claims

In 2002-2003 the Medical Board again considered "claims" by physician owned organizations that companies similar to MDI but in the Workers Compensation field were engaged in (a) the unlicensed practice of medicine and/or (b) the corporate practice of medicine. I represented all of the respondents: *Professional Diagnostics Management, Inc. (Control #02-2002-136881); One Call Medical, Inc. (Control #02-2002-136879); Magnetics Imaging Services, Inc. (Control #02-2002-136874).* The facts are startlingly similar.

In these cases the respondents were organizations that acted as intermediaries between workers compensation insurance carriers, treating physicians and imaging institutions. The respondents entered into contracts with the insurance carriers to arrange the MRIs and similar diagnostic procedures when approved by the insurance company. They also entered into contracts with imaging facilities to perform the tests at set rates and under specific guidelines for furnishing results. When the injured workers' treating physician (analogous to the prison doctor) wanted a diagnostic MRI he would seek

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 7

approval of the insurance carrier who would then instruct the doctor to schedule the appointment through one of the respondents. The respondents provided scheduling, reminders to the patient, ensured proper transportation, handled the billing, made sure that records and results were promptly transmitted and paid the bills, including those to the imaging facility and its radiologist.

After extensive briefing and factual investigation, the Medical Board found in favor of all respondents:

> "In reviewing [respondent's] business and procedures
> for conducting business, the Board did not find that this
> referral service in violation of the Medical Practices Act."

It is noteworthy that the Medical Board specifically affirmed the 1991 Counsel's Opinion as an expression of existing law and controlling in this proceeding in 2003.

### E. Business & Professions Code § 2481 Was Enacted In 2005 And Certainly Applies.

In 2005 the California legislature enacted Business & Professions Code § 2481. It expressly states that it is an expression of existing law.[1] Commonly known as the *locum tenens agency* act, section 2481 wanted to recognize a practical and time-tested solution to a looming medical crisis in California. The statute begins with a strong finding of need.[2] It then contains two sections that are important to MDI's analysis.

First, "(b) Notwithstanding any other provision of law, a "locum tenens agency" shall not be deemed to be an employer, employment agency, employment counseling service, job listing service, nurse's registry, temporary services employer, or leasing

---

2418 (g) It is the intent of the Legislature that this section confirm and be declaratory of, rather than change, existing law.

2418. (a) The Legislature hereby finds and declares all of the following:
(1) The State of California is facing a growing crisis in physician supply due, in part, to difficulties in recruiting and retaining physicians.
(2) This crisis is particularly harsh for facilities operated by the state and local governments due to the difficulties of funding full-time medical staff.
(3) Locum tenens physicians provide a critical source of medical services that virtually all hospitals in California use at one time or another every year.
(4) The great majority of California hospitals, and many medical groups and other providers, including many state-supported facilities, use locum tenens agencies either continuously or from time to time to help fill their medical staffing needs.
(5) Most locum tenens agencies are barred from employing physicians under the corporate practice doctrine (Article 18 (commencing with Section 2400)) and, thus, do not employ the physicians whose locum tenens services they arrange.

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 8

employer of a licensee." As noted in the act and consistent with the Medical Board positions for over fifteen years, this kind of agency is not engaged in improper conduct and is clearly allowed.

Second, section (c) contains the definition of a locum tenens agency. MDI clearly qualifies:

| Section | MDI's position |
|---|---|
| (1) Contracts with clients or customers to identify licensees willing to perform locum tenens services and to arrange for the licensees to perform locum tenens services for the clients or customers on a temporary, nonpermanent basis . | This is one of the main functions of the MDI contract with the prisons. |
| (2) Arranges for the licensees to perform locum tenens services only to those clients and customers that are legally authorized to enter into independent contractor arrangements with licensees. | MDI qualifies. |
| (3) Does not determine the rates of payment made to a licensee providing locum tenens services, or determine the hours of work by the licensee. | MDI negotiates with the physician to a mutually agreeable rate. It does not "determine" the rate or determine the number of hours. This is negotiated by the physician. |
| (4) Receives payment directly from its clients or customers for its services which, to the degree that the payment includes payment for the locum tenens services, remits the payment for the locum tenens services in full directly to the licensee. | MDI bills and remits the payment in full |
| (5) Charges fees that are reasonably related to the value of the services that the locum tenens agency provides its clients and customers, and that are in no way related to the quantity or value of locum tenens services provided by the licensee. This section does not prohibit a locum tenens agency from charging its clients and customers based on the number of days or hours that the locum tenens services are provided or based on the particular speciality of the locum tenens services. | MDI proposes a pricing model under which CDCR will be billed an administrative fee on a "per inmate per day" basis, which will be at a rate of $0.70 per inmate per day. This administrative fee represents a reasonable amount for the value of MDI's services performed under the Contract. See enclosed Pricing Proposal. |

WALSH LAW FIRM

Letter to Martin H. Dodd, Esq.
March 7, 2007
Page 9

## 4. Conclusion.

MDI is not involved in the corporate practice of medicine or in the unlicensed practice of medicine. Its activities are consistent with those of many other organizations that have served the medical community and general public in California for decades. MDI has moved thousands of prisoners more quickly and efficiently through the medical system by offering what is essentially and only an *efficient scheduling service*. MDI's valuable services benefit the physician-prisoner patient relationship, and the prison's statutory mandate to provide proper healthcare to the inmate population by allowing the referrals and treatment to be completed more quickly and less expensively than would otherwise be the case. Its activities are legal, well-vouched and a great benefit to California.

If you have any questions, please do not hesitate to call.

Very truly yours,

James R. Walsh

Enclosures:  (1) 1991 Future Diagnostics, Inc. Opinion.
(2) MDI Proposed Scope of Work
(3) MDI Proposed Pricing Structure

CC:    Timothy Heffernan
Watt, Tieder, Hoffar & Fitzgerald
8405 Greensboro Drive, Suite 100
McLean, VA 22102

STATE OF CALIFORNIA — STATE AND CONSUMER SERVICES AGENCY PETE WILSON, Governor

Department of Consumer Affairs 400 R STREET, SUITE 3000, SACRAMENTO, CA 95814-6224
(916) 445-4216

RECEIVED AUG 05 '91 PMCO & S

2 August 1991

Frank Albino, Attorney at Law
Parker, Milliken, Clark, O'Hara & Samuelian
333 So. Hope St., 27th Flr.
Los Angeles, CA 90071-1488

Re: Diagnostic Imaging Services Agreements

Dear Frank:

This is in response to your request that I review agreements between Future Diagnostics, Inc. (FDI) and an unspecified magnetic resonance imaging (MRI) center (the Diagnostic Imaging Services Agreement) and FDI and a professional medical corporation (radiology group) (the Radiological Services Agreement). FDI is a nonprofessional general law corporation.

FDI represents several workers' compensation insurers in negotiating with MRI centers and radiology groups and obtaining, in this case, volume MRI services at below market rates. When a worker suffers an employment related injury, he or she first is examined by a primary care physician designated by the employer's workers' compensation insurer. If the physician determines that an MRI is necessary and orders same, the physician's office contacts FDI, which schedules the appointment with an MRI center with which it has entered into an agreement, referred to above. The MRI is also staffed with a radiology group pursuant to a separate agreement, which is not reviewed here, but is a standard agreement seen in these cases where physicians on location agree to provide necessary medical and diagnostic services to patients at an MRI center and bill separately for their professional fees.[1]

Essentials of the Radiological Services Agreement pertinent to our discussion are as follows.

In this agreement the radiology group agrees that all the physicians in the group are board certified or board eligible in radiology and that all the physicians are covered by liability

---

[1]Actually on statement sent to third party payors and patients may contain both the radiologists' and MRI center's fees, but they will be separately itemized.

Frank Albino
2 August 1991
Page 2



insurance.  In a previous version of the agreement, the radiology
group agreed to provide the MRI reports back to FDI, but this has
been modified so that the reports and any supplemental reports
are provided back to the patient's referring physician.  In a
previous version the radiology group also agreed to bill payors
(insurers) the agreed upon fees and "in accordance with the
protocols and meeting such standards of quality as may reasonably
be established by FDI."[2]  The portion within quotations does not
appear in the currently proposed agreement.  Finally, in the
previous version, in those cases where the radiologist determines
that further diagnostic services was necessary, this was
communicated to FDI and the patient; now this information will be
communicated to the referring physician and patient.

The agreement also provides that orders for MRI issue from
the referring physician, but are routed through FDI.  You
explained that this is required by the client insurers so that
the patient is referred to an MRI center which has negotiated an
agreement with the insurer through FDI.

The Diagnostic Imaging Services Agreement between FDI and
the various imaging centers is not within our jurisdiction, since
it does not directly involve physicians or any other healing arts
licensee.  That agreement did contain a provision similar to the
one described above regarding the rereferral of patients back to
FDI if a radiologist found that additional studies, medical
consultation, or treatment were necessary.  That agreement was
also modified to provide for that referral back to the patient's
physician.

The agreements raised two issues.

The first is whether the negotiated fees which are below
market rates constitute a discount which is made as inducement
for the referral of patients in violation of Section 650 of the
Business and Professions Code.  Section 650 provides in pertinent
part as follows:

650.  Except as provided in Chapter 2.3 (commencing
with Section 1400) of Division 2 of the Health and Safety
Code, the offer, delivery, receipt, or acceptance by any
person licensed under this division [a healing arts
licensee] of any rebate, refund, commission, preference,

---

[2]No portion of the radiologists' fees are paid to or
retained by FDI.

Frank Albino
2 August 1991
Page 3



patronage dividend, discount, or other consideration,
whether in the form of money or otherwise, as
compensation or inducement for referring patients,
clients, or customers to any person, irrespective of any
membership, proprietary interest or coownership in or
with any person to whom these patients, clients or
customers are referred is unlawful.

* * *

In 63 Ops.Cal.Atty.Gen. 89 the Attorney General in a formal
opinion set forth the elements of a violation of Section 650.
They include 1) the offer, acceptance, receipt, or delivery, 2)
by a healing arts licensee, 3) of a discount or any other
consideration, 4) as compensation or inducement to any person,
and 5) for the referral of patients, clients, or customers.
The issue here is whether the radiologists are offering a
discount as inducement for the referral of patients.  In this
case, however, it appears that the physicians are not discounting
a standard fee in order to compensate for or induce referrals,
but are negotiating alternative fees with groups of insurers.

Similar arrangements are common in today's managed health
care programs, such as preferred provider organizations and
certain health maintenance organizations through independent
practice associations.  These negotiations and agreements appear
to be sanctioned by Section 16770 of the Business and Professions
Code, which provides in pertinent part:

16770.  (a) It is the intent of the Legislature to
ensure that the citizens of this state receive high-
quality health care coverage in the most efficient and
cost-effective manner possible.

(b) In furtherance of this intent, the Legislature
finds and declares that it is in the public-interest to
enhance the ability of California purchasers, providers,
and payers to form efficient-sized bargaining units for
the purpose of contracting for the delivery of health
care services.

* * *

Frank Albino
2 August 1991
Page 4



      (d) The Legislature further finds and declares that individual providers or purchasers, whether institutional, professional, or otherwise, have not proven to be efficient-sized bargaining units for these contracts, and that the formation of groups and combinations of institutional and professional providers and purchasing groups for the purpose of creating efficient-sized contracting units represents a meaningful addition to the health care marketplace.

     \* \* \*

      (f) The Legislature further finds and declares that the public interest in ensuring that citizens of this state receive high-quality health care coverage in the most efficient and cost-effective manner possible is furthered by permitting negotiations for alternative rate contracts between purchasers or payers of health care services, and institutional and professional providers, or through a person or entity acting for, or on behalf of, a purchaser, payer, or provider.

     \* \* \*

Looking at the agreements and arrangement in total, it appears that the radiologists and FDI are negotiating alternative rates for the clients and insureds of the workers' compensation carriers and not discounting standard fees in order to induce referrals.   This activity fits within the health care policies envisioned by the Legislature in Section 16770.

    The second issue pertains to the prohibition against the corporate practice of medicine found in Section 2400 of the Business and Professions Code.  Citing _Pacific Employers Ins. Co. v. Carpenter_ (1936) 10 Cal.App.2d 592, 52 P.2d 992, and the opinion at 65 Ops.Cal.Atty.Gen. 223, I had expressed the concern upon reviewing earlier drafts of the agreements that FDI would come very close to, if not engaging in, the corporate practice of medicine by administering the doctor-patient relationship.   By making the modifications to the radiological services agreement I summarized above, FDI appears to have retreated from that position.  Its role now seems more analogous to that of a "messenger" or intermediary in a relationship between insurers and a preferred provider organization.

Frank Albino
2 August 1991
Pag  5



The agreements as modified do not appear to be inconsistent with any of the laws administered by the Medical Board of California.  I hope this will be of assistance to you.

Sincerely,

JEFF MARSCHNER
Deputy Director
Legal Affairs

By GREGORY GORGES
Staff Counsel

cc:  Foone Louie

CONFIDENTIAL

# STATEMENT OF WORK

The California Department of Corrections and Rehabilitation ("CDCR") intends to contract with Medical Development International ("MDI") for the provision of certain services for the California State Prison, Los Angeles County and California Correctional Institution in Tehachapi as set forth herein.

## I.   STATEMENT OF REQUIRED OUTPUT

MDI's services consist of those services performed by MDI, its subcontractor hospitals or facilities and/or the network of physician providers as enumerated herein. Performance of the services set forth within this Statement of Work is achieved by utilizing a "performance-based" approach. In this regard, required services are described in terms of required output rather than specific task assignments as the precise quantity and duration for such services, by their nature, is not known.

### A.   The contractor shall achieve the following outputs:

**Output # 1:** MDI will arrange for inpatient and outpatient physician services that conform to community standards and all local, State and Federal laws and regulations applicable to the delivery of health care to members of the general public. Any physician performing such services pursuant to this Contract shall not be an employee of MDI, but agree to perform such services as an independent contractor for the temporary duration of this Contract (and for any Modification or option periods exercised by the CDCR). In arranging for inpatient and outpatient physician services, MDI agrees that it shall not interfere with or attempt to influence the clinical judgment of a physician providing services hereunder.

**Output # 2:** MDI will arrange for inpatient and outpatient facility services that conform to community standards and all local, State and Federal laws and regulations applicable to the delivery of health care to members of the general public. Any hospital or facility performing such services pursuant to the Contract shall not be an employee of MDI, but agree to perform such services as an independent contractor for the temporary duration of this Contract (and for any Modification or option periods exercised by the CDCR). In arranging for inpatient and outpatient facility services, MDI agrees that it shall not interfere with or attempt to influence the clinical judgment or a hospital or facility providing services hereunder.

**Output # 3:** MDI will provide administrative services to assist with the scheduling of inmate appointments as directed by the CDCR Chief Medical Officer as well as provide a system of centralized billing for all Contract services.

**Output # 4:** MDI will manage medical record information in a manner that promotes continuity of care while observing restrictions on the release of such information.

CONFIDENTIAL

**Output # 5:** MDI will maintain open avenues of communication in order to facilitate the exchange of information between physicians, facilities, and the State institutions regarding the Contract services.

### B.    Compliance with Contract Requirements:

The CDCR reserves the right to inspect and evaluate in a reasonable manner all services rendered during the performance of this Contract. MDI shall ensure that the terms and conditions of this Statement of Work are fully incorporated into the independent contractor agreements between MDI and any physician, hospitals or facilities performing services hereunder.

MDI agrees to educate its subcontractors and providers about applicable CDCR policies and procedures. CDCR agrees to provide MDI with advance notice of any applicable policies or procedures for which it desires MDI and the network of providers to be advised of or to act in compliance with.

## II.    SPECIFIC REQUIREMENTS

**Output # 1:** MDI will arrange for inpatient and outpatient physician services that conform to community standards and all local, State and Federal laws and regulations applicable to the delivery of health care to members of the general public. Any physician performing such services pursuant to this Contract shall not be an employee of MDI, but agree to perform such services as an independent contractor for the temporary duration of this Contract (and for any Modification or option periods exercised by the CDCR). In arranging for inpatient and outpatient physician services, MDI agrees that it shall not interfere with or attempt to influence the clinical judgment of a physician providing services hereunder.

### A.    Community-Based Services:

When physician services resulting from CDCR referral are performed in a community-based setting (e.g., hospital facility, surgical center, physician's office, etc.), MDI will arrange for the additional provision from the physician provider of professional medical staff who have appropriate educational qualification, experience, licensure, and board certification (where required) to achieve Output #1.

If requested by the CDCR, MDI shall be required to document primary source verification of the credentials for each physician provider including: current license from the appropriate State Board of Medical Examiners, education from professional schools or universities, evidence of completion of internships and/or residences as appropriate.

Any physician performing under this contract shall be currently privileged at the Contract facility or have the capability of obtaining privileges within 60 days from Contract award.

CONFIDENTIAL

Physicians shall only prescribe pharmaceutical drugs that are listed in the approved CDCR Formulary. Requests for exemptions shall be submitted to CDCR. As part of the Discharge Instructions, the issuance of sample medication to any CDCR patient shall be prohibited.

Availability of specialty care shall be agreed upon by the physician providers to be performed within 60 calendar days from the date of the referral to the specialty provider.

**B.    Specialty Clinics Conducted On-Site at the Institution:**

As an additional service under Output #1, MDI will arrange for physician services to be performed on-site at the institutions. Such on-site services will be identified by CDCR and MDI agrees to arrange for such services to be conducted at the institutions as soon as practicable.

**Output # 2:** MDI will arrange for inpatient and outpatient facility services that conform to community standards and all local, State and Federal laws and regulations applicable to the delivery of health care to members of the general public. Any hospital or facility performing such services pursuant to the Contract shall not be an employee of MDI, but agree to perform such services as an independent contractor for the temporary duration of this Contract (and for any Modification or option periods exercised by the CDCR). In arranging for inpatient and outpatient facility services, MDI agrees that it shall not interfere with or attempt to influence the clinical judgment or a hospital or facility providing services hereunder.

MDI will arrange for hospital or facility services on an as-needed basis in a manner that adheres to community standards of quality and cost-effective medical care. The services required to satisfy Output #2 shall include inpatient facility and outpatient facility, including emergency room services. Inpatient visits for non-emergency services shall require private room accommodations with ample seating for up to three armed or unarmed correctional officers per inmate.

It is the CDCR's preference to obtain the services of facilities that are accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

**Output # 3:** MDI will provide administrative services to assist with the scheduling of inmate appointments as directed by the CDCR Chief Medical Officer as well as provide a system of centralized billing for all Contract services.

MDI provides advanced information technology for scheduling, billing and reports to be accessed by the CDCR via the Internet. CDCR can track all inputted inmate information and summary financial data by using MDI's secure web site. To gain access to MDI's website, each appropriate CDCR staff member will be assigned a unique login and password. Once login is accomplished, CDCR staff can receive updated account information. Some of the features include:

CONFIDENTIAL

- **Access to scheduling.** CDCR can view the daily provider and facility community-based services scheduled for inmates. Users can review schedules on a retrospective and prospective basis to determine historical and future patient events.
- **Escorted Trip Form.** CDCR can create, store, edit, and print escorted town trip forms tied directly to created appointments.
- **CPT and ICD-9 Codes with definitions.** MDI's website includes an option where a user can place their cursor over a procedure and diagnosis codes and the definition of this code will appear in a text box on the screen. This is a helpful feature when monitoring an inmate's case to determine if bills have been received for all expected procedures.
- **Medical Records.** After an appointment takes place the medical record generated by the physician or specialist is scanned in real-time to the website. Accessing the scheduling function allows immediate access to these notes, without waiting on a fax or the mail. An example screenshot of the access screen and medical record output are at the end of this section of the proposal.

Physician providers also will have access to claims information via MDI's website. Provider staff will also be assigned unique log-ins and passwords to enable them to search submitted claims and estimated date of payment, including payment amount. This service eliminates a great deal of time that provider's offices spend in telephone calls, letters and faxes of claims inquiry. This service will be accessible 24 hours a day, and should answer most claim questions from providers.

MDI shall provide and operate a system of centralized billing which will enhance the institution's ability to track medical obligations and expenditures incurred for any medical service provided hereunder. This system shall, at a minimum, ensure that consolidated invoices are submitted to the Regional Accounting Office within 90 calendar days after an inmate's discharge or outpatient encounter. Invoices that are submitted beyond the 90-day requirement shall constitute a performance deficiency under this Output and shall be documented in the contractor's performance evaluations. For invoices that are submitted within the acceptable time period, but are found to contain errors or require further justification, CDCR agrees not to take unilateral deductions or deny an invoice in its entirety. CDCR agrees that it will notify MDI via telephone, email or by correspondence to communicate the error or obtain clarification. MDI will then have 5 days to provide clarification or correct the error. Completed HCFA-1500 and UB-92 forms shall accompany the MDI's centralized billing invoice for all treatment encounters.

All services hereunder, including services by any physician, hospital or facility and services to be provided by MDI, are to be performed in accordance with the attached pricing schedule. CDCR shall not be responsible for and agrees not to make any payments directly to MDI's subcontractors or providers for services provided pursuant to this Agreement. The parties recognize and agree that CDCR's obligations are to pay MDI for contracted services. MDI agrees that to the extent it receives payment directly from the CDCR for services that include payment for physician(s) services, MDI shall

4

CONFIDENTIAL

remit the payment for such service in full directly to the appropriate physician. Likewise, MDI agrees that to the extent it receives payment directly from the CDCR for services that include payment for hospital or facility services, MDI shall remit the payment for such service in full directly to the appropriate hospital or facility. MDI agrees to charge fees for its services that are reasonably related to the value of MDI's services only as set forth in the attached pricing schedule, and are in no way related to the quantity or value of those services performed by the physicians, hospitals or facilities hereunder.

**Output # 4:** MDI will manage medical record information in a manner, which promotes continuity of care while observing restrictions on the release of such information.

Upon request, authorized CDCR staff shall have access to and obtain copies of all inmate medical records and evaluation and treatment reports prepared and maintained by MDI. Inmate medical records will be subject to review by the institution for validation of payment and verification of services rendered. Release of information shall only be made in accordance with community standards, JCAHO regulations, and the Privacy Act of 1974. Any request(s) for copies of an inmate's medical records, for reasons unrelated to continuity of care, by the inmate or a third party shall be directed to the institution for processing.

Notwithstanding the above restrictions on the release of information, medical record information shall be provided to the institution in order to enhance inmate recovery as well as continuity of care. At the completion of treatment, MDI shall provide the institution with any and all documented discharge instructions provided by the attending physician.

Copies of all lab, x-ray, ekg, progress notes and emergency working notes shall also accompany the patient or be faxed immediately to the institution. A written report by the attending physician which documents the circumstances of the inpatient treatments, outpatient procedure, or other consultation shall be provided to the institution within ten business days of the inpatient discharge, outpatient procedure, or other consultation. All lab and consultations pending at time of discharge shall be faxed to the institution upon receipt but not later than 90 calendar days past discharge.

MDI shall provide a Point of Contact (POC) to answer any questions or concerns as to MDI raised by the CDCR or institution and to act as a referral, if needed, for any questions, issues or concerns that the CDCR or institution may have with regard to any physician, hospital or facility providing services hereunder. The POC shall be familiar with the contracted list of specialists, physician providers, hospitals and facilities but it is understood and agreed to by the parties that the POC shall not exercise any clinical judgment nor shall the POC interfere with or attempt to influence the clinical judgment of a physician providing services hereunder. MDI shall designate these individuals in writing to the Contracting Officer. Multiple POC's may be designated; however, MDI agrees to identify those days and/or hours when each person shall be the primary POC (e.g., after-hours and weekend referrals). There shall be an open line of communication between MDI, its representatives, and the institutions to ensure that only those services

5

CONFIDENTIAL 

## PROPOSED PRICING STRUCTURE FOR SERVICES PERFORMED DIRECTLY BY MEDICAL DEVELOPMENT INTERNATIONAL

MDI proposes a pricing model under which CDCR will be billed an administrative fee on a "per inmate per day" basis, which will be at a rate of $0.70 per inmate per day. This administrative fee represents a reasonable amount for the value of MDI's services performed under the Contract. MDI proposes to phase-in this model and lower the cost to CDCR based upon the number of institutions being serviced by MDI, as follows:

1. For the first two institutions  --   $0.70 per inmate per day
2. For the next four institutions --   $0.63 per inmate per day
3. For institutions beyond six   --   $0.60 per inmate per day

**EXHIBIT  F**

160 SANSOME STREET  PHONE 415-399-3840  WRITER'S DIRECT DIAL
17TH FLOOR        FAX 415-399-3838
SAN FRANCISCO, CA 94104              415-399-3841
                                    Martin@dfdlaw.com



March 26, 2007

VIA FACSIMILE AND MAIL (703) 893-8029

Timothy E. Heffernan
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, VA 22102

Re:    Medical Development International

Dear Mr. Heffernan:

As you know, Robert Sillen, the Receiver for the California prison medical system, raised a significant question as to whether your client, Medical Development International ("MDI"), was violating the prohibition in California on the corporate practice of medicine and, thus, that the services being provided by MDI to the California prison system were unlawful. We reviewed the original Statement of Work in the unexecuted contract between MDI and the California Department of Corrections and Rehabilitation ("CDCR") pursuant to which MDI began performing services. That review convinced us that, as described, the services provided by MDI were not lawful. We also reviewed a proposed amended version of the Statement of Work which MDI had submitted to CDCR in December 2006, and which was presumably intended to address concerns raised by lawyers for the State about the legality of MDI's services as described in the original Statement of Work. We were not convinced that the proposed modifications, even if implemented, would render lawful the services performed by MDI.

You met with John Hagar and the Receiver in February and indicated that you would demonstrate to the Receiver's satisfaction that MDI was operating lawfully in California. Subsequently, you and I spoke and I pointed out the areas in the two versions of the Statement of Work that I believe indicated that MDI was violating the prohibition on the corporate practice of medicine. Thereafter, we received a letter from James Walsh which purported to explain why MDI was, in his opinion, operating legally and which included yet another proposed amended Statement of Work and a new proposed rate schedule. We thereafter sought and obtained from you forms of agreement that MDI utilizes with the healthcare providers and hospitals that it furnishes to CDCR. In the meantime, both John Hagar and I asked (and have asked again) that MDI provide us with information pertaining to rates that MDI has negotiated with such healthcare providers. You have taken the position that those rates are proprietary – notwithstanding that your client is doing business with a public agency – and would not share them with the Receiver unless and until the Receiver committed to formalizing a contractual relationship with your client.

Timothy E. Heffernan
March 26, 2007
Page 2

We reviewed carefully Mr. Walsh's letter, its enclosed Statement of Work and the form agreements. Frankly, these documents raised as many questions as they answered and did not establish to the Receiver's satisfaction that MDI is now, or would under the proposed Statement of Work be, operating lawfully.

We discussed the various iterations of the Statement of Work and the pro forma provider agreements with attorneys in State government familiar with questions pertaining to the corporate practice of medicine. They agreed that the original Statement of Work in the unexecuted contract and the proposed Statement of Work MDI sent in December very likely described an unlawful arrangement. They also confirmed our belief that, contrary to Mr. Walsh's assertions in his letter, MDI is not operating as a locum tenens agency. Finally, just as we continue to have questions about the legality of MDI's operations after reviewing the most recent proposed Statement of Work and form agreements, the State lawyers also expressed concerns that MDI may be violating the law.

Specifically, our questions fall into several areas highlighted by the California Medical Board on its website in its discussion of the corporate practice of medicine. The Medical Board emphasizes that it is unlawful for an unlicensed entity to make the following types of decisions, among others:

- Selection, hiring/firing (as it relates to clinical competency or proficiency) of physicians, allied health staff and medical assistants.

- Setting the parameters under which the physician will enter into contractual relationships with third-party payers.

- Decisions regarding coding and billing procedures for patient care services.

- Approving of the selection of medical equipment and medical supplies for the medical practice.

In addition, the Medical Board also points out that the following business model is unlawful:

- Medical Service Organizations arranging for, advertising, or providing medical services rather than only providing administrative staff and services for a physician's medical practice (non-physician exercising controls over a physician's medical practice, even where physicians own and operate the business).

We also call to your attention an opinion of the California Attorney General from 2000 that opined that a business arrangement remarkably similar – at least outwardly – to that which MDI provides was illegal under the corporate practice of medicine doctrine. *See* 83 Op. Atty. Gen 170 (2000).

Timothy E. Heffeman
March 26, 2007
Page 3

We do not mean to say that we have concluded that MDI's actual operating structure and relationships are illegal in California; rather, we emphasize only that we have seen nothing that provides us any assurance that MDI is or will be operating legally and nothing that clearly addresses the various issues we have identified. As you can no doubt appreciate, the Receiver cannot be party to an arrangement that is, or that even may be, unlawful. While we recognize that MDI contends that it is operating lawfully, we have been and remain troubled by the absence of any adequate description or disclosure of the actual relationship between MDI and the providers it furnishes to CDCR, the unwillingness to disclose the rates MDI has negotiated with the providers, the murkiness and lack of precision in the form agreements insofar as the obligations of the service providers are concerned, and perhaps most of all -- given the strict prohibition on the corporate practice of medicine -- no opinion or analysis from a State regulatory agency attesting to the legal propriety of the services MDI is rendering or intends to render.

Accordingly, the Receiver is not prepared to execute an agreement with MDI unless, within 10 days of this letter, MDI provides verifiable, factual information satisfactory to the Receiver that will provide answers to the questions and concerns he has raised, as well as an opinion letter from an appropriate State agency that attests to the legality of MDI's operating model as it actually exists at the two prisons at which MDI is providing services.

Very truly yours,

Martin H. Dodd

cc: Robert Sillen
   Jared Goldman
   John Hagar

**EXHIBIT G**

# JUSTIFICATION FOR CONTRACTING SERVICES

**Contractor Name** <u>Medical Development International</u> **Agreement No.** _____
**Type of Service:** <u>Comprehensive Medical Services</u>
Government Code § 19130(b) Personal services contracting shall be permissible
when any of the following conditions can be met:

<u>**Check All That Apply**</u>

**X** | **GC § 19130(b)(3):** The services contracted are not available within civil service, cannot be performed satisfactorily by civil service employees, or are of such a highly specialized or technical nature that the necessary expert knowledge, experience, and ability are not available through the civil service system.

**X** | **GC § 19130(b)(8):** The contractor will provide equipment, materials, facilities, or support services that could not feasibly be provided by the state in the location where the services are to be performed.

☐ | **GC § 19130(b)(10):** The services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate their very purpose.

By selecting this section, the institution acknowledges they have, and will continue recruitment efforts to fill the temporary/relief position requested. The institution also acknowledges they have utilized all Civil Service resources and have/will contact all current master contractors, if applicable, prior to utilizing the services of this contractor.

Each institution is responsible for maintaining records of those recruitment efforts (such as, advertisements, job opportunity bulletins/interviews and list recruitments/notifications, etc.) in the event the California State Personnel Board and/or Unions challenge the validity of this contract.

☐ | **GC § 19130(b)(10):** The services are of such an urgent, temporary, or occasional nature that the delay incumbent in their implementation under civil service would frustrate their very purpose.

By selecting this section, the institution hereby certifies that the contracted services are so diminutive that there is insufficient work available for a civil service classification.

By signing below, institution hereby certifies that contracting out for this service is essential to maintaining Departmental Operations.

_____
**Signature (HCM/CMO or AWBS)**

8/30/06
**Date**

1

STATE OF CALIFORNIA
**BID/CONTRACT REQUEST**
CDC 998B (REV. 8/98)
  NEW REQUEST:   Complete all sections EXCEPT Section D.
  RENEWAL:   Complete all sections.
  AMENDMENT:   Do not use this form, complete Form CDC XXX

DEPARTMENT OF CORRECTIONS

CONTRACT NUMBER (CMO use only)

1. DATE REQUEST SUBMITTED
August 22, 2006

**SECTION A - REQUESTING UNIT INFORMATION**

| 2. REQUESTING UNIT NAME Community Provider Network Program -- Division of Correctional Health Care Services | 3. UNIT BILLING CODE 16957 |
|---|---|
| 4. CONTACT PERSON Karen Creighton | 5. PHONE NUMBER (916) 327-1871 | 6. FAX NUMBER (916) 322-7090 |

**SECTION B - BID/CONTRACT INFORMATION**

7. REQUESTED CONTRACT TERM
(See "Late Submittal Policy" on Reverse)   A. TERM START:
Check If Applicable
OR UPON APPROVAL  X   B. TERM END: September 30, 2009

8. SCOPE OF SERVICE Must be completed for all requested services (scope can be attached). SEE FURTHER INSTRUCTIONS ON REVERSE.

This new contract request is to allow Medical Development International to provide comprehensive medical services to CCI and LAC patients. Applicable rates are attached. Institution NTP chart by Fiscal Year is attached.

NOTE: This document will only be considered complete and timely when all necessary documentation has been provided. Depending on the contracting situation, this could include a bidder's list, late submittal justification, sole source justification, project budget, etc.

**SECTION C – CONTRACTOR INFORMATION**
(COMPLETE ONLY IF MASTER CONTRACT, INTERAGENCY AGREEMENT, PUBLIC ENTITY OR SOLE SOURCE)

| 9. CONTRACTOR'S NAME Medical Development International | 10. CONTRACTOR'S CONTACT PERSON Staci Brown |
|---|---|
| 11. STREET ADDRESS and P.O. BOX 822 Highway A1A N., Suite 310 | 12. TITLE Chief Financial Officer |
| 13. CITY, STATE, ZIP CODE Point Vedra Beach, FL 32082 | 14. TELEPHONE NUMBER (include area code & extension) (510) 970-5106 |
| 15. CONTRACTOR'S FEDERAL I.D. NUMBER OR SOCIAL SECURITY NUMBER 52-1811150 | 16. FAX NUMBER (include area code & extension) (510) 970-5728 |

**SECTION D - RENEWAL CONTRACT INFORMATION**

| 17. PRIOR CONTRACT NUMBER | 18. PRIOR CONTRACTOR NAME |
|---|---|

**SECTION E - INDEPENDENT CONTRACTOR DETERMINATION**
(DO NOT COMPLETE THIS SECTION FOR INTERAGENCY AGREEMENTS OR PUBLIC ENTITIES)

19. By signing below, I certify that the individual to be engaged under this contract appears for State and Federal employment tax withholding and related reporting purposes, to be an

☒ INDEPENDENT CONTRACTOR (Check one or more of the applicable factors that support this determination.)

☐ Contractor may direct the manner in which services are performed.       ☐ Contractor cannot be fired if the obligations of the contract are met.
☒ Contractor may hire and fire assistants as needed.       ☒ Contractor performs work for other persons/firms at the same time.
☒ Services will be performed on an as needed basis by a doctor, lawyer, or other professional defined in Unemployment Insurance Code Section 656.
☐ Other (specify)

☐ EMPLOYEE (Attach Chief Deputy Director approval if this box is checked.)

**SECTION F - FISCAL YEAR BREAKDOWN**
(ATTACH ADDITIONAL SHEET, IF NECESSARY)

| 20. ENTER FISCAL YEAR(S) | FY   06/07 | 07/08 | 08/09 | TOTAL |
|---|---|---|---|---|
| 21. CONTRACT AMOUNT | $ | $ | $ | $  26,250,000 |
| 22. BUDGET ANALYST APPROVAL (Central Office and Paroles only) | | 23. PRINTED NAME | | 24. DATE SIGNED |
| 25. INDEX CODE 2915 | 26. OBJECT CODE and TITLE 413.02 | 27. PCA CODE 50100 | 28. FUND SOURCE General |

**SECTION G - PROGRAM SIGNATURES/APPROVALS**

| 29. 1st Level APPROVAL | 30. DATE SIGNED 8/31/06 | 31. 2nd Level APPROVAL | 32. DATE SIGNED 8/31/06 |
|---|---|---|---|

*Information and Instructions on reverse.*

### Scope of Work

The California Department of Corrections and Rehabilitation (CDCR) intends to contract with Medical Development International for the provision of comprehensive medical services to California State Prison, Los Angeles County and California Correctional Institution in Tehachapi.

**STATEMENT OF REQUIRED OUTPUT**
Performance of these comprehensive medical services is defined within this Statement of Work utilizing a "performance-based" approach. Thus, required services are described in terms of required output rather than specific task assignments.

**The contractor shall achieve the following outputs:**

**Output # 1:** Provide physician services which conform to community standards and all local, state and Federal laws and regulations applicable to the delivery of health care to members of the general public.

**Output #2:** Provide inpatient and outpatient facility services, which conform to community standards and all local, state and Federal laws regulations applicable to the delivery of health care to members of the general public.

**Output # 3:** Provide a system of centralized billing for contract services.

**Output # 4:** Manage medical record information in a manner, which promotes continuity of care while observing restrictions on the release of information.

**Output #5:** Maintain open avenues of communication, facilitating the exchange of information between contract physician, contract facility, and the institutions regarding the contract services.

**Compliance with Contract Requirements:**

The Contractor's efforts under this contract shall be monitored to ensure that the required output is achieved. The CDCR reserves the right to inspect and evaluate in a reasonable manner all services rendered during the performance of this contract.

**SPECIFIC REQUIREMENTS**

**Output # 1:** Provide physician services which conform to community standards and all local, state, and Federal laws and regulations applicable to the delivery of health care to members of the general public.

3

**Community-Based Services:**

When physician services resulting from a CDCR referral are performed in a community-based setting (e.g., hospital facility, surgical center, physician's office, etc.), the Contractor shall provide the services of professional medical staff who have appropriate educational qualification, experience, licensure, and board certification (where required) to achieve Output #1.

If requested by the CDCR, the Contractor shall be required to document primary source verification of the credentials for each provider including: current license from the appropriate State Board of Medical Examiners, education from professional schools or universities, evidence of completion of internships and/or residences as appropriate.

Physicians performing under this contract shall be currently privileged at the contract facility or have the capability of obtaining privileges within 60 days for a contract award.

Contract physicians shall only prescribe pharmaceutical drugs that are listed in the approved CDCR Formulary. Requests for exemptions shall be submitted to CDCR. As part of the Discharge Instructions, the issuance of sample medication to any CDCR patient shall be prohibited.

Availability of specialty care shall be within 60 calendar days from the date of the referral to the specialty provider.

**Specialty Clinics Conducted On-Site at the Institution:**

As an additional tool to satisfy Output #1, physician services will be performed on-site at the institutions.

**Output #2:** Provide inpatient and outpatient facility services, which conform to community standards, and all local, state and Federal laws and regulations applicable to the delivery of health care to the members of the general public.

The contractor shall provide facility services on an as-needed basis in a manner which adheres to community standards of quality and cost-effective medical care.

The services required to satisfy Output #2 shall include inpatient facility and outpatient facility, including emergency room services. Inpatient visits for non-emergency services shall require private room accommodations with ample seating for up to three armed or unarmed correctional officers per inmate.

It is the CDCR's preference to obtain the services of facilities that are accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO).

4

**Output #3:** Provide a system of centralized billing for contract services.

The Contractor shall provide and operate a system of centralized billing which will enhance the institution's ability to track medical obligations and expenditures. This system shall, at a minimum, ensure that consolidated invoices are submitted to the Regional Accounting Office within 90 calendar days after an inmate's discharge or outpatient encounter. Invoices which are submitted beyond the 90-day requirement shall constitute a performance deficiency under this Output and shall be documented in the contractor's performance evaluations. Invoices which are submitted within the acceptable time period, but are found to contain errors or require further justification, will be returned to the contractor. Contractors will then have 60 days to resubmit a revised invoice. Completed HCFA-1500 and UB-92 forms shall accompany the contractor's centralized billing invoice for all treatment encounters.

The contractor shall describe its centralized billing process in detail, providing an example bill for evaluation.

**Output #4:** Manage medical record information in a manner, which promotes continuity of care while observing restrictions on the release of information.

Upon request, authorized CDCR staff shall have access to and obtain copies of all inmate medical records and evaluation and treatment reports prepared and maintained by the contract facility and/or contract physicians. Inmate medical records will be subject to review by the institution for validation of payment and verification of services rendered. Release of information shall only be made in accordance with community standards, JCAHO regulations, and the Privacy Act of 1974. Any request(s) for copies of an inmate's medical records, for reasons unrelated to continuity of care, by the inmate or a third party shall be directed to the institution for processing.

Notwithstanding the above restrictions on the release of information, medical record information shall be provided to the institution in order to enhance inmate recovery as well as continuity of care. At the completion of treatment, the Contractor shall provide the institution with documented discharge instructions, as provided by the attending physician.

Copies of all lab, x-ray, ekg, progress notes and emergency working notes shall also accompany the patient or be faxed immediately to the institution. A written report by the attending physician which documents the circumstances of the inpatient treatments, outpatient procedure, or other consultation shall be provided to the institution within ten business days of the inpatient discharge, outpatient procedure, or other consultation. All lab and consultations pending at time of discharge shall be faxed to the institution upon receipt but not later than 90 calendar days past discharge.

**Output #5:** Maintain open avenues of communication, facilitating the exchange of information between the contract physician, contract facility, and the institutions regarding the contract services.

5

The Contractor shall provide a Point of Contact (POC) who shall be responsible for facilitating the Contractor's delivery of health services under this contract. The POC shall have sufficient clinical knowledge to enable preliminary technical consultation, with referral to a specialist if necessary. The Contractor shall designate this individual in writing to the Contracting Officer prior to the start date of the contract. Alternate POC's may be designated; however, the Contractor must identify those times when an alternate shall be the primary POC (i.e., after-hours and weekend referrals). There shall be an open line of communication between the Contractor, its representatives, and the institutions to ensure that only those services ordered by the institution are provided, unless required for intervention in a life-threatening emergency. In the event of a life-threatening emergency, the Contractor shall notify the institution within a 24-hour time period or the next normal working day. All referrals resulting from Contractor examinations shall be the sole responsibility and decision of the Health Care Manager or his/her designee(s) at the institutions. No inmate may be transferred to another medical facility, with exception of emergency cases, without advanced approval by authorized medical staff.

6

**MDI Rates for CCI/LAC at San Joaquin Community Hospital**

### INPATIENT SERVICES

Inpatient services that **do not** qualify for Medicare Outlier Payments shall be reimbursed at **115%** of the current Medicare Diagnosis-Related Group rate, including emergency room services resulting in an admission.

Inpatient services that **do** qualify for Medicare Outlier Payments shall be reimbursed at **130%** of the current Medicare Diagnosis-Related Group rate, including emergency room services resulting in an admission.

**Please note that inpatient services shall be reimbursed utilizing Medicare Provider Number 050038 (Santa Clara Valley Medical Center).**

### OUTPATIENT SERVICES

Outpatient Services shall be reimbursed at **229%** of the current Medicare APC rates.

### PROFESSIONAL SERVICES

Urology, Orthopedics, Pathology (Anatomical and Clinical), Infectious Disease, Ophthalmology and Neurosurgery shall be reimbursed at **186%** of the current Medicare Participating Provider Fee Schedule.

Emergency, Radiology and Internal Medicine shall be reimbursed at **214%** of the current Medicare Participating Provider Fee Schedule.

Cardiology and Anesthesia shall be reimbursed at **243%** of the current Medicare Participating Provider Fee Schedule.

*Provider shall submit invoices with amounts per the rates as listed.*

7

MDI Rates for CCI/LAC at Tehachapi Hospital

## INPATIENT SERVICES

Inpatient services shall be reimbursed at 115% of the current Medicare Diagnosis-Related Group rate, including emergency room services resulting in an admission.

**Please note that inpatient services shall be reimbursed utilizing Medicare Provider Number 050038 (Santa Clara Valley Medical Center).**

## OUTPATIENT SERVICES

Outpatient Services shall be reimbursed at **229%** of the current Medicare APC rates.

## PROFESSIONAL SERVICES

Urology, Orthopedics, Pathology (Anatomical and Clinical), Infectious Disease, Ophthalmology and Neurosurgery shall be reimbursed at **186%** of the current Medicare Participating Provider Fee Schedule.

Emergency, Radiology and Internal Medicine shall be reimbursed at **214%** of the current Medicare Participating Provider Fee Schedule.

Cardiology and Anesthesia shall be reimbursed at **243%** of the current Medicare Participating Provider Fee Schedule.

*Provider shall submit invoices with amounts per the rates as listed.*

**MDI - San Joaquin Community Hospital & Tehachapi Hospital**

| Institution | FY 06/07 | FY 07/08 | FY 08/09 | Total for Institution |
|---|---|---|---|---|
| CCI | $3,500,000.00 | $3,500,000.00 | $3,500,000.00 | $10,500,000.00 |
| LAC | $5,250,000.00 | $5,250,000.00 | $5,250,000.00 | $15,750,000.00 |
| Totals | $8,750,000.00 | $8,750,000.00 | $8,750,000.00 | $26,250,000.00 |

9

**NTP Accounting Information - Hospitals**

| Facility | | | Object Code | Fund Code | PCA Code | | |
|---|---|---|---|---|---|---|---|
| ASP | 2200 | 1022 | 413.02 | General | | 20302 | 50100 |
| CAL | 3100 | 1031 | 413.02 | General | | 20302 | 50100 |
| CCC | 1400 | 1014 | 413.02 | General | | 20302 | 50100 |
| CCI | 1100 | 1011 | 413.02 | General | | 20302 | 50100 |
| CCWF | 2800 | 1028 | 413.02 | General | | 20302 | 50100 |
| CEN | 3400 | 1034 | 413.02 | General | | 20302 | 50100 |
| CIM | 400 | 1004 | 413.02 | General | | 20302 | 50100 |
| CIW | 700 | 1007 | 413.02 | General | | 20302 | 50100 |
| CMC | 900 | 1009 | 413.02 | General | | 20302 | 50100 |
| CMF | 1200 | 1012 | 413.02 | General | | 20302 | 50100 |
| COR | 2400 | 1024 | 413.02 | General | | 20302 | 50100 |
| CRC | 1300 | 1013 | 413.02 | General | | 20302 | 50100 |
| CSA | 4200 | 1042 | 413.02 | General | | 20302 | 50100 |
| CTF | 600 | 1003 | 413.02 | General | | 20302 | 50100 |
| CV | 2600 | 1026 | 413.02 | General | | 20302 | 50100 |
| DVI | 800 | 1008 | 413.02 | General | | 20302 | 50100 |
| FSP | 300 | 1003 | 413.02 | General | | 20302 | 50100 |
| HD | 3800 | 1038 | 413.02 | General | | 20302 | 50100 |
| ISP | 3600 | 1036 | 413.02 | General | | 20302 | 50100 |
| KV | 4300 | 1043 | 413.02 | General | | 20302 | 50100 |
| LAC | 3200 | 1032 | 413.02 | General | | 20302 | 50100 |
| MC | 2300 | 1023 | 413.02 | General | | 20302 | 50100 |
| NK | 3300 | 1033 | 413.02 | General | | 20302 | 50100 |
| PBSP | 2700 | 1027 | 413.02 | General | | 20302 | 50100 |
| PVP | 3700 | 1037 | 413.02 | General | | 20302 | 50100 |
| RJD | 2100 | 1021 | 413.02 | General | | 20302 | 50100 |
| SAC | 1800 | 1018 | 413.02 | General | | 20302 | 50100 |
| SCC | 1600 | 1016 | 413.02 | General | | 20302 | 50100 |
| SOL | 1700 | 1017 | 413.02 | General | | 20302 | 50100 |
| SQ | 200 | 1002 | 413.02 | General | | 20302 | 50100 |
| SV | 4100 | 1041 | 413.02 | General | | 20302 | 50100 |
| VSPW | 3900 | 1039 | 413.02 | General | | 20302 | 50100 |
| WSP | 2900 | 1029 | 413.02 | General | | 20302 | 50100 |

9/22/2005

10

**VENDOR DATA RECORD** (rev.4/30/04)

*NOTE: Governmental entities, federal, state, and local (including public school districts) are not required to submit this form.*

| | | |
|---|---|---|
| **1**<br>**PLEASE**<br>**RETURN TO:**<br>→ → → → | DEPARTMENT/OFFICE<br><br>STREET ADDRESS<br><br>CITY, STATE, ZIP CODE | **PURPOSE:** Information contained in this form will be used by state agencies to prepare Information Returns (Form 1099) and for withholding on payments to nonresident vendors. Prompt return of this fully completed form will prevent delays when processing payments.<br><br>*(See Privacy Statement on reverse)* |

| | |
|---|---|
| **2**<br><br>**NAME AND**<br>**ADDRESS** | VENDOR'S BUSINESS NAME   Vendor PHONE NUMBER<br>MEDICAL DEVELOPMENT INTERNATIONAL (904) 473-1200<br>SOLE PROPRIETOR – ENTER OWNER'S FULL NAME HERE (Last, First, M.I.)<br><br>MAILING ADDRESS (Number and Street or P.O. Box #)<br>822 HWY A1A N., SUITE 310<br>(City, State and Zip Code)<br>PONTE VEDRA BEACH, FL 32082 |

**3**
**VENDOR ENTITY & PAYMENT TYPE**

☐ INDIVIDUAL/SOLE PROPRIETOR   (Must provide Social Security #)
☐ PARTNERSHIP
☐ ESTATE OR TRUST

☐ MEDICAL CORPORATION   (including dentistry, podiatry, optometry, etc.)
☐ EXEMPT ORGANIZATION   (Nonprofit)

☑ LEGAL CORPORATIONS
☐ LIMITED LIABILITY CORP.
☐ OTHER

☑ Services (Medical or Non-Medical)
☐ Equipment/ Supplies

☐ Travel Reimbursement
☐ Rent
☐ OTHER

**NOTE**
·Government entities
· CO employees
**are not** required to submit this form.

**4**
**VENDOR'S TAXPAYER I.D. NUMBER**

SOCIAL SECURITY NUMBER REQUIRED FOR INDIVIDUAL/SOLE PROPRIETOR BY AUTHORITY OF REVENUE AND TAXATION CODE SECTION 18646 (See reverse)

FEDERAL EMPLOYER'S IDENTIFICATION (FEIN): 5 2 - 1 9 1 1 1 5 0

SOCIAL SECURITY NUMBER / ITIN: ☐ ☐ ☐ - ☐ ☐ - ☐ ☐ ☐ ☐

IF VENDOR ENTITY TYPE IS A CORPORATION, PARTNERSHIP, ESTATE OR TRUST, ENTER FEIN.

IF VENDOR ENTITY TYPE IS INDIVIDUAL OR SOLE PROPRIETOR, ENTER SSN. ITIN / SSN IF RESIDENT OF FOREIGN COUNTRY

**NOTE**
Payment will not be processed without an accompanying taxpayer I.D. number.

**5**
**VENDOR RESIDENCY DECLARATION For Tax Purposes**

*All Payments Made By The University Are Subject To Federal and California State Tax Laws*

*Check All Boxes That Apply*
**Federal Income Tax Withholding Status** (Applies to Individuals Only) :

☐ I Am A US Citizen   ☐ I Am A Permanent Resident Alien and I Have a Green Card

☐ I Am Not a U.S. Citizen and I Do Not Have a Permanent Resident Green Card
*Note: All Foreign Citizens/Entities must complete a tax analysis before payments can be made.*

☐ Tax Exempt by Tax Treaty, Country of Residency: _____

**California State Tax Withholding Status** (Applies to All Vendors) :
☑ California Resident (Qualified to do business in CA or have a permanent place of business in CA)

☐ California Nonresident (See Reverse). Payments to CA nonresidents may be subject to state taxes.

☐ A Waiver from CA state tax withholding is attached (From the California Franchise Tax Board).

☐ All services related to this payment were performed OUTSIDE of the state of California.

**NOTE:**
*Prior to making payments to foreign citizens,* United States tax laws require all employers to perform a tax analysis with respect to country of citizenship to determine residency for Federal tax purposes.
*(Please see reverse)*

**NOTE:**
An entity is a resident if incorporated in California; resident at time of such. A trust is resident if one or more trustees are CA residents. Rules for exercise State taxes differ significantly from Federal tax rules. *(Please See reverse)*

**6**
**CERTIFYING SIGNATURE**

I hereby certify under penalty of perjury under the laws of the State of California that the information provided on this document is true and correct. If my residency status should change, I will promptly inform you.

| AUTHORIZED VENDOR REPRESENTATIVE'S NAME (PRINT)<br>STACI BROWN | TITLE<br>CFO |
|---|---|
| SIGNATURE<br>*[signature]* | DATE 08/21/06   TELEPHONE NUMBER 904-473-1200 x116 |

11

## VENDOR DATA RECORD

### ARE YOU A RESIDENT OR NONRESIDENT?

Each corporation, individual/sole proprietor, partnership, estate, or trust doing business with the State of California must indicate residency status along with their vendor identification number.

A corporation if it has a permanent place of business in California. The corporation has a permanent place of business in California if it is organized and existing under the laws of this state or, if a foreign corporation has qualified to transact intrastate business. A corporation that has not qualified to transact intrastate business (e.g., a corporation engaged exclusively in interstate commerce) will be considered as having a permanent place of business in this state only if it maintains a permanent office in this state that is permanently staffed by its employees.

For individual/sole proprietors, the term "resident" includes every individual who is in California for other than a temporary or transitory purpose and any individual domiciled in California who is absent for a temporary or transitory purpose. Generally, an individual who comes to California for a purpose which will extend over a long or indefinite period will be considered a nonresident.

For withholding purposes, a partnership is considered a resident partnership if it has a permanent place of business in California. An estate is considered a California estate if the decedent was a California resident at the time of death and a trust is considered a California trust if at least one trustee is a California resident.

More information on residency status can be obtained by calling the Franchise Tax Board at the numbers listed below:

From within the United States, call 1-800-852-5711
From outside the United States, call 1-916-845-6500
For hearing impaired with TDD, call 1-800-822-6268

### ARE YOU SUBJECT TO NONRESIDENT WITHOLDING?

Payments made to nonresident vendors including corporations, individuals, partnerships, estates and trusts are subject to income tax withholding. Nonresident vendors performing services in California or receiving rent, lease or royalty payments from property (real or personal) located in California will have 7% of their total payments withheld for state income taxes. However, no California tax withholding is required if total payments to the vendor are $1,500 or less for the calendar year.

A nonresident vendor may request that income taxes be withheld at a lower rate or waived by sending a completed form FTB 588 to the address below. A waiver will generally be granted when a vendor has a history of filing California returns and making timely estimated payments. If the vendor activity is carried on outside of California or partially outside of California, a waiver or reduced withholding rate may be granted. For more information, contact:

Franchise Tax Board
Withhold at Source Unit
Attention: State Agency Withholding Coordinator
P.O. Box 651
Sacramento, CA 95812-0651
Telephone: (916) 845-4900
Fax: (916) 845-4831

If a reduced rate of withholding or waiver has been authorized by the Franchise Tax Board, attach a copy to this form.

#### FOREIGN CITIZENS and FOREIGN BUSINESSES

Federal tax withholding regulations differ significantly from California tax withholding requirements. A tax analysis consultation and additional forms must be completed before a payment can be released.

### Privacy Statement

Section 7(b) of the Privacy Act of 1974 (Public Law 93-5791) requires that any federal, state, or local governmental agency which requests an individual to disclose his social security account number shall inform that individual whether that disclosure is mandatory or voluntary, by which statutory or other authority such number is solicited, and what uses will be made of it.

The State of California requires that all parties entering into business transactions that may lead to payment(s) from the State must provide their Taxpayer Identification Number (TIN) as required by Revenue and Taxation Code Section 18646, to facilitate tax compliance enforcement activities and preparation of Form 1099 and other information returns as required by Internal Revenue Code Section 6109(a). The TIN for individuals and sole proprietorships is their Social Security Number (SSN).

It is mandatory to furnish the information requested. Federal law requires that payments for which the requested information is not provided be subject to a 31% withholding and state law imposes noncompliance penalties up to $20,000.

You have the right to access records containing your personal information, such as your SSN. To exercise that right, please contact the business services unit or the accounts payable unit of the state agency (ies) with which you transact that business.

Please call the Department of Finance, Fiscal Systems and Consulting Unit at (916) 324-0385 if you have any questions regarding this Privacy Statement. Questions related to residency or withholding should be referred to the telephone numbers listed above. All other questions should be referred to the requesting agency listed in section 1.

NOTE:
An estate is a resident if decedent was California resident at time of death.
A trust is a resident if one or more trustees have California residency.

12