# EXHIBIT 9

ORIGINAL

James R. Walsh, No. 51764
Edward M. Keech, No. 48098
**WALSH LAW FIRM**
Attorneys at Law
3443 Golden Gate Way, Suite F
Lafayette, CA 94549
Telephone:    925.284.7400
Facsimile:     866.406.8863
Email:           jwalsh@walsh-law.com

Attorneys for Proposed Intervenor
MEDICAL DEVELOPMENT INTERNATIONAL

RECEIVED

07 APR -3  PM 3: 06

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER, et al.,<br><br>Defendant. | No. C01-1351 TEH<br><br>DECLARATION OF TIMOTHY E. HEFFERNAN IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AND MOTION FOR INSTRUCTIONS.<br><br>Date: _____ 2007<br><br>Time: _____ A.M. |

I, Timothy E. Heffernan, declare as follows:

1.    I am a partner in the law firm of Watt, Tieder, Hoffar & Fitzgerald, L.L.P. in McLean, Virginia, of counsel to Medical Development International ("MDI") of Ponte Vedra Beach, Florida. I have personal knowledge of the facts set forth in this declaration.

I hereby certify that the annexed instrument is a true and correct copy of the original issued in my office.
ATTEST:
    RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By _____
                        Deputy Clerk
Date _____

2.   On February 16, 2007, I, along with Mr. Theodore Willich of MDI and Mark Nobili, attended a meeting with the Receiver, his chief of staff and at least half a dozen other persons attending on behalf of the Receiver's office. At that meeting the Receiver stated that he was told that MDI was doing "a good job," but that MDI had an illegal contract and may need a medical license. With regard to a license, the Receiver indicated that if an opinion were provided to show him to the contrary, he would think about paying MDI's back invoices and may negotiate a new contract with MDI. I commented that MDI may decide not to continue to conduct the pilot project without current payment, and the Receiver said that it was necessary for MDI to continue to work on the project, and if MDI withdrew, the Receiver would "make sure MDI never worked in California again." As a result, MDI continued to provide its services to CDCR pending ongoing negotiations over issuance of a new contract.

3.   Attached to this declaration, as Exhibit A, is a true copy of a letter faxed to my office on March 26, 2007 by the Receiver's counsel, Martin H. Dodd, Esq.

4.   The letter demands an opinion from the California Medical Board within ten days on whether MDI needs a license to undertake its pilot projects at California State Prison, Los Angeles County ("LAC") and California Correctional Institution in Tehachapi ("CCI"). I have no reason to believe that the California Medical Board provides such advisory opinions and does so within ten days.

5.   In the same letter, the Receiver's counsel also demands that MDI provide confidential information about its contract rates with doctors and providers in California. MDI offered to do so, but requested that the Receiver agree to a confidentiality agreement to ensure that the information not be otherwise used or disseminated in the marketplace.

2

6.    MDI is not trying to conceal its pricing structure from the Receiver. MDI's bills have been submitted to the CDCR and available since November 2006.

I declare under penalty of perjury that the foregoing is true and correct. Executed at McLean, Virginia, this 30th day of March 2007.

Timothy E. Heffernan

3

Exhibit A

160 SANSOME STREET          PHONE 415-399-3840       WRITER'S DIRECT DIAL
17TH FLOOR                  FAX 415-399-3838
SAN FRANCISCO, CA 94104                              415-399-3841
                                                    Martin@dfdlaw.com



March 26, 2007

VIA FACSIMILE AND MAIL (703) 893-8029

Timothy E. Heffernan
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, VA 22102

Re:    Medical Development International

Dear Mr. Heffernan:

As you know, Robert Sillen, the Receiver for the California prison medical system, raised a significant question as to whether your client, Medical Development International ("MDI"), was violating the prohibition in California on the corporate practice of medicine and, thus, that the services being provided by MDI to the California prison system were unlawful. We reviewed the original Statement of Work in the unexecuted contract between MDI and the California Department of Corrections and Rehabilitation ("CDCR") pursuant to which MDI began performing services. That review convinced us that, as described, the services provided by MDI were not lawful. We also reviewed a proposed amended version of the Statement of Work which MDI had submitted to CDCR in December 2006, and which was presumably intended to address concerns raised by lawyers for the State about the legality of MDI's services as described in the original Statement of Work. We were not convinced that the proposed modifications, even if implemented, would render lawful the services performed by MDI.

You met with John Hagar and the Receiver in February and indicated that you would demonstrate to the Receiver's satisfaction that MDI was operating lawfully in California. Subsequently, you and I spoke and I pointed out the areas in the two versions of the Statement of Work that I believe indicated that MDI was violating the prohibition on the corporate practice of medicine. Thereafter, we received a letter from James Walsh which purported to explain why MDI was, in his opinion, operating legally and which included yet another proposed amended Statement of Work and a new proposed rate schedule. We thereafter sought and obtained from you forms of agreement that MDI utilizes with the healthcare providers and hospitals that it furnishes to CDCR. In the meantime, both John Hagar and I asked (and have asked again) that MDI provide us with information pertaining to rates that MDI has negotiated with such healthcare providers. You have taken the position that those rates are proprietary – notwithstanding that your client is doing business with a public agency – and would not share them with the Receiver unless and until the Receiver committed to formalizing a contractual relationship with your client.

Timothy E. Heffernan
March 26, 2007
Page 2

We reviewed carefully Mr. Walsh's letter, its enclosed Statement of Work and the form agreements. Frankly, these documents raised as many questions as they answered and did not establish to the Receiver's satisfaction that MDI is now, or would under the proposed Statement of Work be, operating lawfully.

We discussed the various iterations of the Statement of Work and the pro forma provider agreements with attorneys in State government familiar with questions pertaining to the corporate practice of medicine. They agreed that the original Statement of Work in the unexecuted contract and the proposed Statement of Work MDI sent in December very likely described an unlawful arrangement. They also confirmed our belief that, contrary to Mr. Walsh's assertions in his letter, MDI is not operating as a locum tenens agency. Finally, just as we continue to have questions about the legality of MDI's operations after reviewing the most recent proposed Statement of Work and form agreements, the State lawyers also expressed concerns that MDI may be violating the law.

Specifically, our questions fall into several areas highlighted by the California Medical Board on its website in its discussion of the corporate practice of medicine. The Medical Board emphasizes that it is unlawful for an unlicensed entity to make the following types of decisions, among others:

- Selection, hiring/firing (as it relates to clinical competency or proficiency) of physicians, allied health staff and medical assistants.

- Setting the parameters under which the physician will enter into contractual relationships with third-party payers.

- Decisions regarding coding and billing procedures for patient care services.

- Approving of the selection of medical equipment and medical supplies for the medical practice.

In addition, the Medical Board also points out that the following business model is unlawful:

- Medical Service Organizations arranging for, advertising, or providing medical services rather than only providing administrative staff and services for a physician's medical practice (non-physician exercising controls over a physician's medical practice, even where physicians own and operate the business).

We also call to your attention an opinion of the California Attorney General from 2000 that opined that a business arrangement remarkably similar – at least outwardly – to that which MDI provides was illegal under the corporate practice of medicine doctrine. *See* 83 Op. Atty. Gen 170 (2000).

Timothy E. Hefferman
March 26, 2007
Page 3

We do not mean to say that we have concluded that MDI's actual operating structure and relationships are illegal in California; rather, we emphasize only that we have seen nothing that provides us any assurance that MDI is or will be operating legally and nothing that clearly addresses the various issues we have identified. As you can no doubt appreciate, the Receiver cannot be party to an arrangement that is, or that even may be, unlawful. While we recognize that MDI contends that it is operating lawfully, we have been and remain troubled by the absence of any adequate description or disclosure of the actual relationship between MDI and the providers it furnishes to CDCR, the unwillingness to disclose the rates MDI has negotiated with the providers, the murkiness and lack of precision in the form agreements insofar as the obligations of the service providers are concerned, and perhaps most of all -- given the strict prohibition on the corporate practice of medicine -- no opinion or analysis from a State regulatory agency attesting to the legal propriety of the services MDI is rendering or intends to render.

Accordingly, the Receiver is not prepared to execute an agreement with MDI unless, within 10 days of this letter, MDI provides verifiable, factual information satisfactory to the Receiver that will provide answers to the questions and concerns he has raised, as well as an opinion letter from an appropriate State agency that attests to the legality of MDI's operating model as it actually exists at the two prisons at which MDI is providing services.

Very truly yours,

Martin H. Dodd

cc: Robert Sillen
    Jared Goldman
    John Hagar

# EXHIBIT 10

1  James R. Walsh, No. 51764
   Edward M. Keech, No. 48098
2  **WALSH LAW FIRM**
   Attorneys at Law
3  3443 Golden Gate Way, Suite F
   Lafayette, CA 94549
4  Telephone:    925.284.7400
   Facsimile:    866.406.8863
5  Email:        jwalsh@walsh-law.com

6  Attorneys for Proposed Intervenor
   MEDICAL DEVELOPMENT INTERNATIONAL
7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

12  MARCIANO PLATA, et al.,              No. C01-1351 TEH

13              Plaintiff,               [PROPOSED] ORDER FOR LEAVE TO INTERVENE

14      v.

15                                       I hereby certify that the annexed
                                         instrument is a true and correct copy
16                                       of the original issued in my office.
    ARNOLD SCHWARZENEGGER,               ATTEST:
                                         RICHARD W. WIEKING
17  et al.,                              Clerk, U.S. District Court
                                         Northern District of California
18              Defendant.               By
                                         Date           Deputy Clerk

19

20          The Court having considered the Motion of MEDICAL DEVELOPMENT

21  INTERNATIONAL ("MDI") for an order for Motion for Leave to Intervene in this action

22  under Rule, 24(b) Fed. R. Civ. P and, and considered the opposition filed,

23  THE MOTION IS GRANTED.

24

25  Dated:  April _____, 2007

26                                  _____
                                    Thelton E. Henderson
                                    Judge of the U.S. District Court
27

28
                                    -1-                    No. C01-1351 TEH

# EXHIBIT 11

James R. Walsh, No. 51764
Edward M. Keech, No. 48098
**WALSH LAW FIRM**
Attorneys at Law
3443 Golden Gate Way, Suite F
Lafayette, CA 94549
Telephone:    925.284.7400
Facsimile:     866.406.8863
Email:          jwalsh@walsh-law.com

RECEIVED

07 APR -3  PM 3:07

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Attorneys for Proposed Intervenor
MEDICAL DEVELOPMENT INTERNATIONAL

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCIANO PLATA, <u>et al.</u>,<br><br>Plaintiff,<br><br>v.<br><br>ARNOLD SCHWARZENEGGER,<br><u>et al.</u>,<br><br>Defendant. | No. C01-1351 TEH<br><br>[PROPOSED] ORDER CONTAINING INSTRUCTIONS<br><br>I hereby certify that the annexed instrument is a true and correct copy of the original issued in my office.<br>ATTEST:<br>RICHARD W. WIEKING<br>Clerk, U.S. District Court<br>Northern District of California<br>By _____ Deputy Clerk<br>Date __10/4/__ |

The Court having considered the Motion of MEDICAL DEVELOPMENT

INTERNATIONAL ("MDI") for Motion for Instructions, and considered the opposition

filed,

THE MOTION IS GRANTED only to the following extent:

(1) MDI's services as provided to the pilot projects and LAC and CCI do not

constitute the corporate practice of medicine under California law and do not require a

medical license;

(2) MDI has no duty to continue to provide services to the pilot projects under

threat of never doing business in California again if it has not received a written contract

-1-

No. C01-1351 TEH

1   and an assurance of prompt payment of past and future invoices.

2

3   Dated:  April _____, 2007

4                                                    _____
                                                     Thelton E. Henderson
                                                     Judge of the U.S. District Court

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. C01-1351 TEH

# EXHIBIT 12

FILED

07 APR -6 PM 1:25

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  FUTTERMAN & DUPREE LLP
   MARTIN H. DODD (104363)
2  160 Sansome Street, 17th Floor
   San Francisco, California 94104
3  Telephone: (415) 399-3840
   Facsimile: (415) 399-3838
4  martin@dfdlaw.com

5  *Attorneys for Receiver*
   Robert Sillen

6

7

8              **UNITED STATES DISTRICT COURT**

9             **NORTHERN DISTRICT OF CALIFORNIA**

10

11  MARCIANO PLATA, et al.,              Case No. C01-1351 TEH

12        *Plaintiffs,*

13      v.                               **DECLARATION OF JOHN HAGAR IN
                                          SUPPORT OF RECEIVER'S
14  ARNOLD SCHWARZENEGGER, et al.,        OPPOSITION TO MOTION OF NON-
                                          PARTY MEDICAL DEVELOPMENT
15        *Defendants.*                   INTERNATIONAL FOR ORDER
                                          SHORTENTING TIME**

16

17

18

19

20

21

22

23

24                            I hereby certify that the annexed
                             instrument is a true and correct copy
25                           of the original on file in my office.
                             ATTEST:
26                           RICHARD W. WIEKING
                             Clerk, U.S. District Court
27                           Northern District of California
                             By
28                                              Deputy Clerk
                             Date  10/9/07

I, John Hagar, declare as follows:

1. I am currently the Special Master in *Madrid v. Tilton* and have been engaged as Chief of Staff for Receiver Robert Sillen in this matter. I make this declaration in support of the Receiver's opposition to the motion for an order shortening time brought by non-party Medical Development International ("MDI"). The facts set forth herein are based upon my own personal knowledge or upon information and belief based upon my investigation into this matter.

2. In my capacity as Chief of Staff for the Receiver, I have general operational oversight of most of the ongoing activities of the receivership and regularly confer with the Receiver and other staff members regarding those activities to ensure that the Receiver's goals and directives are being implemented.

3. In the Fall of 2006, the Receiver made the decision to assume direct control over California Department of Corrections and Rehabilitation ("CDCR") employees responsible for the processing of medical specialty contracts. To effectuate this decision, 34 CDCR employees from the CDCR's Office of Business Services physically moved to the same building in Sacramento where the Receiver has his offices. Shortly thereafter, I was informed by CDCR contract managers, who now reported to me, that two senior CDCR officials were attempting to enter into a $26 million multi-year contract with Medical Development International ("MDI") without following the State's competitive bid process.

4. When I commenced an investigation into the allegations, I discovered that, even though MDI did not have a contract with the State of California, the same two CDCR officials – *without informing the Receiver* – had allowed MDI to place staff into two prisons, California State Prison, Los Angeles County ("LAC") and the California Correctional Institute at Tehachapi ("CCI"). Then, *without competitive bidding and without a contract*, MDI had commenced a program to provide specialty medical services at both prisons. MDI began submitting monthly invoices for hundreds of thousands of dollars, despite the fact that it had no valid contract with the State of California.

1

FUTTERMAN &
DUPREE LLP

5. My initial concerns about MDI included the following:

   a.  The failure by CDCR officials and MDI to proceed with the normal competitive bid contract process.

   b.  An attempt by CDCR officials to force the CDCR contract personnel who now reported to me to approve the MDI contract based on the officials' interpretation of Judge Henderson's *Order re State Contracts and Contract Payments Relating to Service Providers for CDCR Inmate/Patients,* filed March 30, 2006. That Order had been prepared, based on a report I filed as a Correctional Consultant in *Plata.* I was convinced that the Court did not intend for that Order to be utilized to avoid competitive bidding concerning the type of services proposed by MDI. My concern about MDI intensified after I discovered a number of e-mails which indicated that although CDCR contract employees, a CDCR attorney, and an attorney from the Department of General Services all recommended that the CDCR officials pushing the MDI contract seek my advice concerning the proposed contract, those officials had failed to do so.

   c.  MDI is not licensed to practice medicine in California. CDCR and other State attorneys had concluded that the services provided by MDI called for a scope of work that violated the very strong prohibition in California on the "corporate practice of medicine," *i.e.* the provision of medical services by business entities that have not been licensed to practice medicine in California.

   d.  A number of somewhat serious billing irregularities concerning invoices submitted by MDI.

   e.  Reports from health care personnel at one of the two prisons involved that MDI had essentially hijacked all specialty services at that institution. In effect, instead of MDI functioning as one of several alternative available providers for access to specialty services in the community, MDI functioned as the *only* alternative – even when more efficient and less expensive alternatives were available. My subsequent review of the situation confirmed the report; for example, at one the

2

1  two prisons the use of CDCR telemedicine decreased by approximately 80%

2  following MDI's arrival at the prison.

3  f. The rate of payment demanded by MDI, through its billings, appeared to be

4  excessive, far more than needed for the services provided.  Furthermore, although

5  MDI was providing services in Kern County, it demanded Medicare

6  reimbursement rates from Santa Clara County, a proposed contract provision

7  which, according to CDCR contract experts, had never been seen before.

8 6. Based on these concerns I contacted the Office of Inspector General ("OIG") and

9  requested a formal investigation concerning the MDI contract.  That investigation is

10  continuing.  At the same time, I recommended to the Receiver that we stop paying

11  invoices submitted by MDI, pending discussion with MDI and the completion of our own

12  and the OIG's investigations.

13 7. In early February 2006, the Receiver and I met with MDI and its attorneys. We expressed

14  our very strong concerns that MDI's services violated California law.  We also indicated

15  concerns about two related, but independent issues: as noted above, the rates being

16  charged by MDI for its services seemed exorbitant and, furthermore, the Receiver could

17  not determine what the underlying rates that physicians under contract with MDI were

18  charging to or receiving from MDI.  The Receiver underscored that he could not pay for

19  the services being rendered unless and until he was satisfied that MDI was acting

20  lawfully.

21 8. During the meeting, MDI's response to the concerns of the Receivership ranged from

22  threatening legal action, to threatening to discontinue services immediately at CCI and

23  LAC, to alleging that it was the innocent victim of misconduct by the CDCR and that it

24  wanted nothing more than to enter into a formal and legally binding agreement with the

25  State.  At the conclusion of the meeting, MDI conceded that it was faced with a serious

26  business decision: either to cease doing business at LAC and CCI or to convince the

27  Receiver that its contracted activities did not violate California law.  The Receiver

28  emphasized that his primary concern was protecting patient care.  The Receiver urged

1  MDI to prove what it claimed, *i.e.*, that its business practices were legal; however, he

2  emphasized to MDI that if MDI made the decision to cease patient services at LAC and

3  CCI they should do so in a manner that provided for continuity of care.  The Receiver

4  stated at the meeting that if MDI suddenly dumped both contracts in a manner that

5  jeopardized patient care, as MDI had threatened to do, he would not utilize MDI's

6  services anywhere else in California's prison system.

7  9.  The Monday following this meeting I received a telephone call from Timothy Heffernan,

8  the MDI attorney who had attended the meeting with the Receiver.  Mr. Heffernan told

9  me that MDI had made the decision to prove to the Receiver that its services conformed

10  to California law.  He promised to move quickly in this regard, understanding that during

11  the interim MDI would continue to provide services at CCI and LAC *and* that it would

12  not be paid for such services unless and until it proved that the services were legal.  In

13  addition, Mr. Heffernan and I discussed the Receiver's concerns about the price of MDI

14  services, as well as the Receiver's request that MDI provide him with factual data

15  showing what MDI was paying to physician providers compared to what MDI would be

16  paid under its proposed contract.  While I was assured that such data would be

17  forthcoming, as clarified in the Declaration of Martin H. Dodd filed herewith, MDI has

18  never provided the Receivership this crucial information.

19  10.  MDI's subsequent failure to prove that its services are legal in California is described

20  more fully in Mr. Dodd's declaration.

21  11.  Because MDI had threatened and continued to threaten to discontinue specialty services

22  at CCI and LAC, I established a task force of clinical providers and contract staff to

23  develop an alternative method of providing adequate specialty services at the two prisons

24  in the event that MDI carried out its threats.   A comprehensive program was developed

25  which calls for on-site clinical services, improved administrative, clinical and custody

26  coordination, and a new program to attract and retain a network of providers.  This

27  program has been approved for implementation.

28  12.  While efforts were being made to develop a plan for substitute specialty services at CCI

4

1  and LAC, I began to receive anecdotal information that – in direct contrast to claims by

2  MDI – access to specialty care at CCI and LAC remains inadequate. Therefore, to gain an

3  accurate assessment of MDI's performance, I formed a four-person team comprised of a

4  competent correctional physician/administrator, a registered nurse, a correctional expert,

5  and a specialty provider administrator. This week, *i.e.,* the week of April 2, 2007, this

6  team went on site to inspect CCI and LAC. I conducted a telephone conference with the

7  team on Thursday April 5, 2007 and was informed of the following:

8      a. Contrary to the allegations in MDI's moving papers, provisions for special care at

9          CCI and LAC are in crisis. For example, at LAC, although there are 196

10         speciality care cases scheduled for the remainder of April 2007, there are

11         approximately 450 patients who need specialty services who have not yet been

12         scheduled. Of these, 135 of these patients *have been waiting for specialty care*

13         *for more than 90 days.*

14     b. The identical systemic problems which have plagued the CDCR effort to provide

15         prisoner/patient specialty care at other prisons, *e.g.,* poor scheduling, the failure to

16         develop a network of competent providers, inadequate numbers of support staff,

17         inadequate numbers of correctional officer escorts, poor utilization management,

18         the inability to attract providers to come into prisons to deliver care, etc. continue

19         to plague the specialty care services at LAC and CCI. Simply stated, MDI has not

20         demonstrated any "quick fix" expertise.

21     c. To the extent that improvements in specialty care services have been made at CCI,

22         they are primarily the result of hard work on the part a CDCR Registered Nurse,

23         and not MDI.

24     d. During the latter part of March, MDI discontinued providing "in-prison" specialty

25         services at CCI, without informing the Receiver.

26     e. At the same time, MDI implemented a policy and practice of refusing to schedule

27         patients for outside specialty consultations if MDI estimated that the cost of the

28         specialty care would exceed $5000, regardless of the seriousness of the patient's

DECLARATION OF JOHN HAGAR IN SUPPORT OF RECEIVER'S OPPOSITION TO MOTION FOR ORDER SHORTENING TIME
C01-1351 TEH

1    health care problem.  Again, this policy was implemented without MDI informing

2    the Receiver.

3    13. Alarmed by what appeared to be a blatant attempt by MDI to put profits before patient

4    care, I asked my team to implement the Receiver's backup plan for substitute specialty

5    services and instructed the Heath Care Managers and Wardens at both CCI and LAC to

6    discontinue utilizing MDI for any specialty services, effective Friday, April 6, 2007.

7    14. The Office of the Receiver will be forwarding to MDI a demand for the return of any

8    CDCR patient records that are in MDI's possession (to be delivered in a HIPPA

9    compliant manner).  Without these records, timely follow-up and continuity for hundreds

10    of prisoner/patients will be in jeopardy.  In the event that MDI does not comply

11    immediately, the Receiver will bring a motion to compel MDI officials to appear before

12    the Court and show cause why they should not be held in contempt for a violation of page

13    8, paragraph VI. of the Order Appointing Receiver, filed February 14, 2006.

14    15. There is no need for the Court to grant MDI's motion for an order shortening time.  MDI

15    no longer provides specialty care at CCI and LAC; indeed, patient care at both prison will

16    be far better served by the new team approach developed by the Office of the Receiver –

17    at considerably lower cost to California's taxpayers.

18    I declare under penalty of perjury under the laws of the State of California that the

19    foregoing is true and correct.

20    Dated: April 6, 2007

        _John Hagar /MKS)_____

        John Hagar

21

22

23

24

25

26

27

28

FUTTERMAN &
DUPREE LLP

DECLARATION OF JOHN HAGAR IN SUPPORT OF RECEIVER'S OPPOSITION TO MOTION FOR ORDER SHORTENING TIME
C01-1351 TEH

# EXHIBIT 13

FILED

07 APR -6 PH 1:26

CLERK R D W. WIEKING
U.S. DISTRICT COURT
NO. DIST OF CALIFORNIA

1  FUTTERMAN & DUPREE LLP
MARTIN H. DODD (104363)
2  160 Sansome Street, 17th Floor
San Francisco, California 94104
3  Telephone:  (415) 399-3840
Facsimile:   (415) 399-3838
4  martin@dfdlaw.com

5  *Attorneys for Receiver*
Robert Sillen

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **NORTHERN DISTRICT OF CALIFORNIA**

10

11  MARCIANO PLATA, et al.,                    Case No. C01-1351 TEH

12           *Plaintiffs,*

13       v.                                    **DECLARATION OF MARTIN H. DODD
                                               IN SUPPORT OF RECEIVER'S**
14  ARNOLD SCHWARZENEGGER, et al.,             **OPPOSITION TO MOTION OF NON-
                                               PARTY MEDICAL DEVELOPMENT**
15           *Defendants.*                     **INTERNATIONAL FOR ORDER
                                               SHORTENTING TIME**

16

17

18

19

20

21

22

23

24

25

26

27

28

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
    RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
                    Deputy Clerk
Date  10/9/07

FUTTERMAN &
DUPREE LLP

I, Martin H. Dodd, declare as follows:

1. I am attorney licensed to practice before all the courts of the State of California and before this Court and am a partner in the law firm of Futterman & Dupree, LLP, attorneys for Receiver Robert Sillen.  I make this declaration in support of the Receiver's opposition to the motion for an order shortening time brought by non-party Medical Development International ("MDI").  The facts set forth herein are based upon my own personal knowledge and if called as a witness I could testify thereto.

2. In or about early February 2007, the Receiver's Chief of Staff, John Hagar, requested that I undertake an analysis of the legality of the services being provided by MDI to CDCR at California State Prison, Los Angeles County ("LAC") and California Correctional Institute in Tehachapi ("CCI").  I reviewed the scope of work attached to the proposed contract between CDCR and MDI and many dozens of e-mails exchanged by State employees who had reviewed and considered the propriety of the contract.  A number of those employees questioned whether MDI's proposed services under the contract violated the prohibition in California on the "corporate practice of medicine."  I also reviewed a revised proposed scope of work that MDI developed in December 2006 in response to the concerns raised by the State employees.  MDI was performing services at both LAC and CCI, but without any executed contract.  My own legal research and analysis led me to conclude that, as described in the original and revised versions of the scope of work, there was a significant likelihood that MDI was exercising "medical judgment" and/or undue control over physicians that MDI had under contract and thus that MDI was violating the prohibition in California on the corporate practice of medicine.

3. I contacted Timothy Heffernan, counsel for MDI, and expressed my concerns about specific provisions of both the original scope of work and the subsequent scope of work proposed by MDI.  I expressed to him my view that the services described in the both versions of the scope of work violated the law.  Mr. Heffernan agreed that the provisions I pointed out to him, as drafted, raised legitimate questions about the lawfulness of MDI's

1

1 | services.

4. I also expressed to Mr. Heffernan the Receiver's very strong concerns about the propriety of the rates being charged by MDI. In addition, I informed Mr. Heffernan that the Receiver could not adequately evaluate whether the proposed contract with MDI was lawful without disclosure of the rates being charged by the physicians under contract with MDI and how those rates were established. Mr. Heffernan said that MDI had declined to provide that information to the Receiver because it was "proprietary" and that MDI would not provide that information unless the Receiver indicated a willingness to enter into a contract with MDI. For his part, Mr. Heffernan informed me that MDI was reaching the point where it would not continue to perform services without payment.

5. About two weeks later, I received a letter from James Walsh, local counsel for MDI. In that letter, Mr. Walsh argued that MDI's services were lawful, included a *third* proposed scope of work that modified the suggested contract language still further and proposed an entirely different rate structure than MDI had been using previously. Although Mr. Walsh asserted that MDI's services were lawful, he did not provide any opinion or analysis from the California Medical Board attesting to the legality of MDI's business model as applied to LAC and CCI. Moreover, MDI still refused to provide the Receiver with information pertaining to rates being charged by the doctors, contending that those rates were "proprietary." Thereafter, Mr. Heffernan contacted me by telephone and e-mail, inquiring as to whether the Receiver was prepared to enter into a contract with MDI and reiterating that MDI would cease performing services if the Receiver did not indicate a willingness to enter into such a contract.

6. The letter brief from Mr. Walsh did not answer all the Receiver's questions and, in fact, raised additional questions with respect to (a) MDI's actual relationship to the physicians it had under contract; (b) whether and to what extent MDI was exercising "medical" judgment as that term has been construed and understood in California; (c) what rates the physicians were charging; and, (d) what control MDI had exercised over the setting of

2

1    those rates.

2    7.  Because the letter brief failed to provide adequate answers to the Receiver's questions, I

3        contacted employees at the California Department of Consumer Affairs ("DCA") – the

4        parent agency for the California Medical Board responsible for enforcing the prohibition

5        on the corporate practice of medicine – to get their guidance on whether MDI's services,

6        as described in the three iterations of the scope of work, were lawful. The DCA

7        employees reviewed the material and, because the various versions of the scope of work

8        suggested the strong possibility that MDI was in violation of the law, they suggested that I

9        obtain copies of sample agreements between MDI and physicians and hospitals in its

10      "network" in an effort to determine more precisely the relationship between MDI and the

11      providers. I contacted Mr. Heffernan, obtained sample agreements and forwarded them

12      to the DCA.

13    8.  The DCA staff generally agreed that the first and second versions of the scope of work, as

14      drafted, described services that appeared to violate the prohibition on the corporate

15      practice of medicine. They also agreed that the third, and most recent, proposed scope of

16      work sent to me by Mr. Walsh did not fully address the issues or resolve the concerns

17      expressed by the Receiver about the legality of the services.  Moreover, they indicated

18      that the sample agreements themselves raised additional questions, did not fully describe

19      or disclose the actual relationship between MDI and the providers, did not adequately

20      discuss or describe the rates those providers charged and, in the end, did not provide

21      sufficient information for them to make a definitive determination regarding the

22      lawfulness of MDI's activities.

23    9.  On March 26, 2006, I sent a letter to Mr. Heffernan explaining that the information that

24      had been provided by MDI continued to raise questions about the lawfulness of MDI's

25      services and indicating that the Receiver could not, in good conscience, undertake an

26      agreement with MDI if there was a chance that such a contract would violate State law.

27      Rather than simply demand that MDI cease performance, on behalf of the Receiver, I

28

3

FUTTERMAN & DUPREE LLP

1    offered MDI the possibility of a contract if MDI could provide the Receiver with all the

2    factual information he had requested, as well as some indication from the appropriate

3    State agencies that MDI's business model as applied to LAC and CCI was in fact lawful.

4    I suggested that MDI provide such an opinion within 10 days.  A true and correct copy of

5    my March 26 letter is attached hereto as Exhibit 1.  Rather than take the opportunity to

6    obtain, or even to request additional time to obtain, such an opinion, MDI filed its

7    motions.

8    10. Counsel for MDI did not contact me, as required by Civil L.R. 6-3, to request a

9    stipulation for an order shortening time.  The first time that I learned of the motion was

10    when it arrived in my office by hand delivery.

11    I declare under penalty of perjury under the laws of the State of California that the

12 foregoing is true and correct.

13 Dated: April 5, 2007

Martin H. Dodd

4

FUTTERMAN &
DUPREE LLP

160 SANSOME STREET PHONE 415-399-3840 WRITER'S DIRECT DIAL
17TH FLOOR FAX 415-399-3838
SAN FRANCISCO, CA 94104  415-399-3841
  Martin@dfdlaw.com



March 26, 2007

VIA FACSIMILE AND MAIL (703) 893-8029

Timothy E. Heffernan
Watt, Tieder, Hoffar & Fitzgerald, LLP
8405 Greensboro Drive, Suite 100
McLean, VA 22102

  Re: <u>Medical Development International</u>

Dear Mr. Heffernan:

  As you know, Robert Sillen, the Receiver for the California prison medical system, raised a significant question as to whether your client, Medical Development International ("MDI"), was violating the prohibition in California on the corporate practice of medicine and, thus, that the services being provided by MDI to the California prison system were unlawful. We reviewed the original Statement of Work in the unexecuted contract between MDI and the California Department of Corrections and Rehabilitation ("CDCR") pursuant to which MDI began performing services. That review convinced us that, as described, the services provided by MDI were not lawful. We also reviewed a proposed amended version of the Statement of Work which MDI had submitted to CDCR in December 2006, and which was presumably intended to address concerns raised by lawyers for the State about the legality of MDI's services as described in the original Statement of Work. We were not convinced that the proposed modifications, even if implemented, would render lawful the services performed by MDI.

  You met with John Hagar and the Receiver in February and indicated that you would demonstrate to the Receiver's satisfaction that MDI was operating lawfully in California. Subsequently, you and I spoke and I pointed out the areas in the two versions of the Statement of Work that I believe indicated that MDI was violating the prohibition on the corporate practice of medicine. Thereafter, we received a letter from James Walsh which purported to explain why MDI was, in his opinion, operating legally and which included yet another proposed amended Statement of Work and a new proposed rate schedule. We thereafter sought and obtained from you forms of agreement that MDI utilizes with the healthcare providers and hospitals that it furnishes to CDCR. In the meantime, both John Hagar and I asked (and have asked again) that MDI provide us with information pertaining to rates that MDI has negotiated with such healthcare providers. You have taken the position that those rates are proprietary – notwithstanding that your client is doing business with a public agency – and would not share them with the Receiver unless and until the Receiver committed to formalizing a contractual relationship with your client.

Timothy E. Heffernan
March 26, 2007
Page 2

We reviewed carefully Mr. Walsh's letter, its enclosed Statement of Work and the form agreements. Frankly, these documents raised as many questions as they answered and did not establish to the Receiver's satisfaction that MDI is now, or would under the proposed Statement of Work be, operating lawfully.

We discussed the various iterations of the Statement of Work and the pro forma provider agreements with attorneys in State government familiar with questions pertaining to the corporate practice of medicine. They agreed that the original Statement of Work in the unexecuted contract and the proposed Statement of Work MDI sent in December very likely described an unlawful arrangement. They also confirmed our belief that, contrary to Mr. Walsh's assertions in his letter, MDI is not operating as a locum tenens agency. Finally, just as we continue to have questions about the legality of MDI's operations after reviewing the most recent proposed Statement of Work and form agreements, the State lawyers also expressed concerns that MDI may be violating the law.

Specifically, our questions fall into several areas highlighted by the California Medical Board on its website in its discussion of the corporate practice of medicine. The Medical Board emphasizes that it is unlawful for an unlicensed entity to make the following types of decisions, among others:

- Selection, hiring/firing (as it relates to clinical competency or proficiency) of physicians, allied health staff and medical assistants.

- Setting the parameters under which the physician will enter into contractual relationships with third-party payers.

- Decisions regarding coding and billing procedures for patient care services.

- Approving of the selection of medical equipment and medical supplies for the medical practice.

In addition, the Medical Board also points out that the following business model is unlawful:

- Medical Service Organizations arranging for, advertising, or providing medical services rather than only providing administrative staff and services for a physician's medical practice (non-physician exercising controls over a physician's medical practice, even where physicians own and operate the business).

We also call to your attention an opinion of the California Attorney General from 2000 that opined that a business arrangement remarkably similar – at least outwardly – to that which MDI provides was illegal under the corporate practice of medicine doctrine. *See* 83 Op. Atty. Gen 170 (2000).

Timothy E. Heffernan
March 26, 2007
Page 3

   We do not mean to say that we have concluded that MDI's actual operating structure and relationships are illegal in California; rather, we emphasize only that we have seen nothing that provides us any assurance that MDI is or will be operating legally and nothing that clearly addresses the various issues we have identified. As you can no doubt appreciate, the Receiver cannot be party to an arrangement that is, or that even may be, unlawful. While we recognize that MDI contends that it is operating lawfully, we have been and remain troubled by the absence of any adequate description or disclosure of the actual relationship between MDI and the providers it furnishes to CDCR, the unwillingness to disclose the rates MDI has negotiated with the providers, the murkiness and lack of precision in the form agreements insofar as the obligations of the service providers are concerned, and perhaps most of all – given the strict prohibition on the corporate practice of medicine – no opinion or analysis from a State regulatory agency attesting to the legal propriety of the services MDI is rendering or intends to render.

   Accordingly, the Receiver is not prepared to execute an agreement with MDI unless, within 10 days of this letter, MDI provides verifiable, factual information satisfactory to the Receiver that will provide answers to the questions and concerns he has raised, as well as an opinion letter from an appropriate State agency that attests to the legality of MDI's operating model as it actually exists at the two prisons at which MDI is providing services.

                                    Very truly yours,

                                    Martin H. Dodd

cc: Robert Sillen
    Jared Goldman
    John Hagar

# EXHIBIT 14

California Home

Monday, October 8, 2007



welcome to California



**Medical Board of California Home**

**About the Board**

**A-Z Index**

**Consumer Information**

**Licensee Information**

**Applicant Information**

**Join the MBC Subscribers' List**

**Forms**

**Brochures / Publications**

**Media Room**

**Medical Schools**

**LVS Subscription Service**

**Laws & Regulations**

**Affiliated Healing Arts**

**Expert Reviewer Program**

**Diversion Program**

**Job Opportunities at the Medical Board**

*Check Your Doctor Online*

## Medical Board of California

Search

○ My CA   ● This Site

### Corporate Practice of Medicine

The following is to provide guidance to physicians on the prohibition against the corporate practice of medicine.

Note: This area of law can be complicated, therefore physicians are encouraged to discuss their medical practices and business enterprises with appropriately knowledgeable legal experts. The Medical Board of California continues to receive complaints and inquiries about the law, and some repeating issues are presented here.

The Medical Practice Act, Business and Professions Code section 2052, provides:

"Any person who practices or attempts to practice, or who holds himself or herself out as practicing...[medicine] without having at the time of so doing a valid, unrevoked, or unsuspended certificate...is guilty of a public offense."

Business and Professions Code section 2400, within the Medical Practice Act, provides in pertinent part:

"Corporations and other artificial entities shall have no professional rights, privileges, or powers."

The policy expressed in Business and Professions Code section 2400 against the corporate practice of medicine is intended to prevent unlicensed persons from interfering with or influencing the physician's professional judgment. The decisions described below are examples of some of the types of behaviors and subtle controls that the corporate practice doctrine is intended to prevent. From the Medical Board's perspective, the following healthcare decisions should be made by a physician licensed in the State of California and would constitute the unlicensed practice of medicine if performed by an unlicensed person:

- Determining what diagnostic tests are appropriate for a particular condition.
- Determining the need for referrals to, or consultation with, another physician/specialist.
- Responsibility for the ultimate overall care of the patient, including treatment options available to the patient.
- Determining how many patients a physician must see in a given period of time or how many hours a physician must work.

In addition, the following "business" or "management" decisions and activities, resulting in control over the physician's practice of medicine, should be made by a licensed California physician and not by an unlicensed person or entity:

- Ownership is an indicator of control of a patient's medical records, including determining the contents thereof, and should be retained by a California-licensed physician.
- Selection, hiring/firing (as it relates to clinical competency or proficiency) of physicians, allied health staff and medical assistants.
- Setting the parameters under which the physician will enter into contractual relationships with third-party payers.
- Decisions regarding coding and billing procedures for patient care services.
- Approving of the selection of medical equipment and medical supplies for the medical practice.

The types of decisions and activities described above cannot be delegated to an unlicensed person, including (for example) management service organizations. While a physician may consult with unlicensed persons in making the "business" or "management" decisions described above, the physician must retain the ultimate responsibility for, or approval of, those decisions.

The following types of medical practice ownership and operating structures also are prohibited:

- Non-physicians operating a business for which physician ownership and operation are required: any business advertising, offering, and/or providing patient evaluation, diagnosis, care and/or treatment. These are services which can only be *offered or provided* by physicians.
- Physician(s) operating a medical practice as a limited liability company, a limited liability partnership, or a general corporation.
- Management Service Organizations arranging for, advertising, or providing medical services rather than

only providing administrative staff and services for a physician's medical practice (non-physician exercising controls over a physician's medical practice, even where physicians own and operate the business).

- A physician acting as "medical director" when the physician does not own the practice. For example, a business offering spa treatments that include medical procedures such as Botox injections, laser hair removal, and medical microdermabrasion, that contracts with or hires a physician as its "medical director."

In the examples above, non-physicians would be involved in the unlicensed practice of medicine, and the physician may be aiding and abetting the unlicensed practice of medicine.

Back to Top of Page

Disclaimer – Privacy Policy – Conditions of Use
© 2007 State of California.