1
2
3
4
5
6
7
8
9
10

                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF CALIFORNIA

                         ----oo0oo----

11  MEDICAL DEVELOPMENT
    INTERNATIONAL, a Delaware              NO. CIV. 2:07-2199 WBS EFB
12  corporation,

13          Plaintiff,                     MEMORANDUM AND ORDER RE:
                                           MOTION TO TRANSFER VENUE
14      v.

15  CALIFORNIA DEPARTMENT OF
    CORRECTIONS AND
16  REHABILITATION, ROBERT SILLEN,
    individually and as Receiver,
17  and J. CLARK KELSO, as
    Receiver,
18
            Defendants.
19  _____/

20

21                       ----oo0oo----

22          Plaintiff Medical Development International ("MDI")

23  brought this action against defendants California Department of

24  Corrections and Rehabilitation ("CDCR"), Robert Sillen

25  ("Sillen"), individually and as Reciever, and J. Clark Kelso

26  ("the Receiver"), as Receiver.  Presently before the court is the

27  Receiver's motion to transfer this action to the Northern

28  District of California pursuant to 28 U.S.C. § 1404(a).

                                  1

I.   <u>Factual and Procedural Background</u>

On October 3, 2005, the Honorable Thelton Eugene Henderson of the Northern District of California issued an opinion in <u>Plata v. Schwarzenegger</u>, No. 01-1351, 2005 WL 2932253 (N.D. Cal. Oct. 3, 2005),[1] a class action challenging the constitutional adequacy of medical care provided to CDCR inmates with serious medical needs.  <u>Id.</u> at *1.  In his opinion, Judge Henderson determined that the California prison medical care system was "broken beyond repair." <u>Id.</u>

In response to these systemic defects, Judge Henderson established a Receivership to manage the health care systems at the CDCR's various institutions to bring the medial care up to constitutional standards.  <u>Id.</u>  Judge Henderson subsequently appointed defendant Sillen as the Receiver on February 14, 2006 (effective April 17, 2006) and charged him with the "duty to control, oversee, supervise, and direct all administrative, personnel, financial, accounting, contractual, legal, and other operational functions of the medical delivery component of the CDCR."  <u>Plata v. Schwarzenegger</u>, No. 01-1351, slip op. at 2 (N.D. Cal. Feb. 14, 2006) ("Order Appointing Receiver") (hereinafter "OAR").

In a subsequent order on March 30, 2006, Judge Henderson directed the CDCR, then under the control of Sillen, to

[1]     The Receiver filed a Request for Judicial Notice in which he asks the court to take notice of court documents relating to both this action and the <u>Plata</u> case. (Docket No. 62.)  The court will grant the Receiver's request, as the documents are all public documents whose accuracy cannot be questioned.  Fed. R. Evid. 201; <u>see</u> <u>U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.</u>, 971 F.2d 244, 248 (9th Cir. 1992).

1  begin developing new processes for medical contract management.
2  Plata v. Schwarzenegger, No. 01-1351, slip op. at 5-7 (N.D. Cal.
3  Mar. 30, 2006).  The March 30, 2006 Order required the CDCR to
4  pay "all current outstanding, valid, and CDCR approved medical
5  invoices (even in the absence of a separate written approved
6  contract) within 60 days of the date of this order."  Id. at 5.
7  The Order further provided that during a 180-day planning period,
8  "to ensure continuity of medical care, and to mitigate the loss
9  of life or limb and preserve the limited pool of competent
10  providers, CDCR shall not be required to competitively bid
11  medical services contracts nor file bid exemption applications .
12  . . ."  Id.

13       At about this same period, the CDCR entered into
14  negotiations with plaintiff--an administrator of prison health
15  care systems--to provide specialty medical services for inmates
16  at two California correctional facilities as part of a pilot
17  program.  (Compl. ¶¶ 8, 20-21.)  In early September 2006, CDCR
18  officials permitted plaintiff to begin performing services at the
19  two institutions notwithstanding the absence of a final executed
20  contract. (Id. ¶¶ 25-27.)

21       Shortly after plaintiff began providing its services,
22  the CDCR staff--noting that plaintiff was not licensed to
23  practice medicine in California--questioned whether plaintiff was
24  functioning in violation of California's prohibition on the
25  corporate practice of medicine.  (Id. ¶¶ 33-34.)  In January
26  2007, amid the ongoing concerns regarding the legality of
27  plaintiff's services, Sillen called for a halt to the CDCR's
28  processing of plaintiff's final contract and ordered the CDCR to

1   stop further payments on plaintiff's invoices.  (Id. ¶¶ 36-37.)

2   Plaintiff nonetheless continued providing services without

3   compensation.  (Id. ¶ 42.)  During a February 16, 2007 meeting,

4   Sillen renewed his concerns to plaintiff regarding the legality

5   of its services and indicated that plaintiff could be paid only

6   if it was determined that it could lawfully provide services in

7   California.  (Id. ¶ 44.)  Plaintiff again continued to provide

8   services to the two institutions, purportedly in reliance on "Mr.

9   Sillen's representations regarding future payment."  (Id. ¶ 45.)

10          On March 7, 2007, plaintiff provided Sillen with a

11  legal memorandum--drafted by its counsel--that concluded its

12  services were being lawfully provided.  (Id. ¶ 46.)  Sillen

13  "refused to accept the opinion," ultimately demanding that

14  plaintiff obtain an official opinion from the Medical Board of

15  California.  (Id. ¶¶ 47-48.)  When plaintiff failed to promptly

16  comply with his demand, Sillen effectively ended their

17  relationship when he allegedly "physically expelled Plaintiff['s]

18  personnel" from the two CDCR pilot program institutions on April

19  7, 2007.  (Id. ¶¶ 50-51.)

20          On September 17, 2007, plaintiff filed a complaint in

21  Sacramento Superior Court against Sillen (in both his official

22  and individual capacities) and the CDCR.  In its Complaint,

23  plaintiff alleges fifteen state law causes of action arising from

24  its purported reliance on certain misrepresentations that Sillen

25  and the CDCR made throughout the preliminary contract

26  negotiations.  On October 16, 2007, Sillen removed the action to

27  this court pursuant to 28 U.S.C. § 1442(a)(1).

28          On January 23, 2008, Judge Henderson dismissed Sillen

                                 4

as Receiver, simultaneously appointing Kelso as the new Receiver.
On February 14, 2008, this court dismissed the action on the
ground that plaintiff was required to obtain Judge Henderson's
permission to bring an action against the Receiver. (Docket No.
50.)  Plaintiff then filed an ex parte application with Judge
Henderson in the Northern District requesting leave to file suit
against the Receiver, which was denied on the grounds that leave
would be futile because the Receiver was immune from suit.
Plaintiff appealed both rulings.

The Ninth Circuit reversed in part, finding that
permission from the appointing court was unnecessary to sue the
Receiver under the statutory exception in 28 U.S.C. § 959(a) and
that the Receiver was not immune from suit.  Med. Dev. Int'l v.
Cal. Dept. of Corr. & Rehab., 585 F.3d 1211, 1216, 1219 (9th Cir.
2009).  The Ninth Circuit then remanded the action to this court,
noting "that nothing in [its] opinion prevents the Eastern
District from coordinating with or, if appropriate, transferring
the action to the Northern District."  Id. at 1222.  The Receiver
subsequently filed a motion to transfer the action to the
Northern District. (Docket No. 60.)  CDCR filed a statement of
its non-opposition to the motion to transfer. (Docket No. 66.)

II. Discussion

"For the convenience of parties and witnesses, in the
interest of justice, a district court may transfer any civil
action to any other district or division where it might have been

5

brought."  28 U.S.C. § 1404(a).[2]  Under § 1404(a), a district

court "has discretion to adjudicate motions for transfer

according to an individualized, case-by-case consideration of

convenience and fairness."  <u>Jones v. GNC Franchising, Inc.</u>, 211

F.3d 495, 498 (9th Cir. 2000) (quoting <u>Stewart Org. v. Ricoh</u>

<u>Corp.</u>, 487 U.S. 22, 29 (1988)) (internal quotation marks

omitted).  To undertake this analysis of "convenience" and the

"interests of injustice," a district court may weigh "multiple

factors," including the plaintiff's choice of forum, the contacts

relating to the plaintiff's cause of action in the chosen forum,

the convenience of witnesses and parties, and the ease of access

to sources of proof.[3]  <u>Id.</u> at 498-99; <u>see</u> <u>DeFazio v. Hollister</u>

<u>Employee Share Ownership Trust</u>, 406 F. Supp. 2d 1085, 1088-89

(E.D. Cal. 2005) (Karlton, J.); <u>Williams v. Bowman</u>, 157 F. Supp.

2d 1103, 1106 (N.D. Cal. 2001).

          "No single factor is dispositive and a district court

---

[2]      The parties do not dispute that this case could have
been brought in the Northern District of California, as
defendants appear to be subject to personal jurisdiction in that
district and venue would be proper there.  <u>See</u> <u>Robinson v. Mich.</u>
<u>Consol. Gas Co.</u>, 918 F.2d 579, 586 (6th Cir. 1990) (finding
actions against a receiver may be brought in the appointing court
even without any independent grounds for asserting jurisdiction);
<u>Diners Club, Inc. v. Bumb</u>, 421 F.2d 396, 398-401 (9th Cir. 1970);
<u>see</u> <u>also</u> <u>Straus Family Creamery v. Lyons</u>, 219 F. Supp. 2d 1046,
1048 (N.D. Cal. 2002) (noting venue in a suit against a state
agency is appropriate in any city in which the Attorney General
has an office).

[3]      Other factors considered by courts include the
availability of compulsory process to compel attendance of
unwilling non-party witnesses, the location where relevant
agreements were negotiated and executed, the state that is most
familiar with the governing law, the differences in the costs of
litigation in the two forums, the presence of a forum selection
clause, and the relevant public policy of the forum state.  <u>GNC</u>
<u>Franchising</u>, 211 F.3d at 498-99.

has broad discretion to adjudicate motions for transfer on a case-by-case basis." <u>Ctr. for Biological Diversity v. Kempthorne</u>, No. 08-1339, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008) (citing <u>Stewart Org.</u>, 487 U.S. at 29; <u>Sparling v. Hoffman Constr. Co.</u>, 964 F.2d 635, 639 (9th Cir. 1988)). Ultimately, the party moving for a transfer of venue under § 1404(a) "bears the burden to show that another forum is more convenient and serves the interest of justice." <u>F.T.C. v. Watson Pharm., Inc.</u>, 611 F. Supp. 2d 1081, 1086 (C.D. Cal. 2009) (citing <u>GNC Franchising</u>, 211 F.3d at 499).

The Receiver's primary argument in support of its motion to transfer venue avails the "interests of justice" aspect of the § 1404(a) analysis.  Specifically, the Receiver argues that transfer of this action to the Northern District will promote efficiency and save judicial resources in light of the interrelatedness between the <u>Plata</u> case and this action. (Receiver's Mem. I/S/O Mot. Transfer 10:27-11:27.)

"An important consideration in determining whether the interests of justice dictate a transfer of venue is the pendency of a related case in the transferee forum." <u>Am. Canine Found. v. Sun</u>, No. 06-654, 2006 WL 2092614, at *3 (E.D. Cal. July 27, 2006) (Karlton, J.) (citing <u>A.J. Indus., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.</u>, 503 F.2d 384, 389 (9th Cir. 1974); <u>see Williams v. Bowman</u>, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (listing "feasibility of consolidation of other claims" as a factor relevant to the "interests of justice").  Indeed, the Supreme Court and the Ninth Circuit have long recognized that "[t]o permit a situation in which two cases involving precisely

7

1   the same issues are simultaneously pending in different District

2   Courts leads to the wastefulness of time, energy and money that §

3   1404(a) was designed to prevent." <u>Cont'l Grain Co. v. The</u>

4   <u>FBL585</u>, 364 U.S. 19, 26 (1960); <u>see</u> <u>A.J. Indus., Inc.</u>, 503 F.2d

5   at 389 ("[T]he pendency of an action in another district is

6   important because of the positive effects it might have in

7   possible consolidation of discovery and convenience to witnesses

8   and parties."); <u>Amazon.com v. Cendent Corp.</u>, 404 F. Supp. 2d

9   1256, 1260 (W.D. Wash. 2005) ("Litigation of related claims in

10  the same tribunal is strongly favored because it facilitates

11  efficient, economical and expeditious pre-trial proceedings and

12  discovery and avoids duplicitous litigation and inconsistent

13  results." (quotations and citations omitted)).

14           While the claims in the <u>Plata</u> case and this action are

15  not identical, this action is nevertheless closely related to the

16  case.  The Receiver was appointed in the <u>Plata</u> case and Judge

17  Henderson has overseen the Receivership since he ordered its

18  creation in February 2006.  In this action, plaintiff contends

19  that it was authorized to begin its pilot program with the CDCR

20  pursuant to the March 30, 2006 Order in <u>Plata</u>.  The March 30,

21  2006 Order is also a significant source of disagreement between

22  the parties.  (<u>See</u> Compl. ¶¶ 16-26; Receiver's RJN Exs. 3, 4.)

23  The interpretation of Judge Henderson's March 30, 2006 Order will

24  likely be dispositive in this action because it will determine

25  whether plaintiff was a medical provider authorized by the Order

26  to begin work for the CDCR without an executed contract or

27  competitive bidding.  (<u>See</u> Compl. ¶¶ 23, 25, 30.)

28           Considerations of judicial economy weigh heavily in

8

favor of transfer.  "Judicial resources are conserved when an
action is adjudicated by a court that has already committed
judicial resources to the contested issues and is familiar with
the facts of the case."  <u>Madani v. Shell Oil Co.</u>, No. 07-4296,
2008 WL 268986, at *2 (N.D. Cal. Jan. 30, 2008).  To properly
adjudicate this action, this court would need to become familiar
with the facts giving rise to the March 30, 2006 Order.  This
would require an investment of a substantial amount time by the
court and would result in the expense of significant resources by
the parties to fully brief the context giving rise to the March
30, 2006 Order in <u>Plata</u>.  Unlike this court, Judge Henderson is
intimately familiar with the details of the <u>Plata</u> case, having
presided over the matter since April 2001.  Given his extensive
knowledge of the case and the facts and circumstances giving rise
to his Order, Judge Henderson can more efficiently interpret the
March 30, 2006 Order than this court.

        Transfer of this matter to the Northern District will
also ensure consistency in the interpretation of the March 30,
2006 Order, preventing uncertainty about the contractual
obligations of the Receiver and CDCR under the Receivership.  <u>See</u>
<u>In re Genesisintermedia, Inc. Sec. Litig.</u>, No. 01-9024, 2003 WL
25667662, at *4 (C.D. Cal. June 12, 2003); <u>Argonaut Ins. Co. v.</u>
<u>Mac Arthur Co.</u>, No. 12-3878, 2002 WL 145400, at *4 (N.D. Cal.
Jan. 18, 2002) ("The best way to ensure consistency is to prevent
related issues from being litigated in two separate venues.").

        Ultimately, the adjudication of this matter in the
Northern District will promote judicial economy, conserve the
parties' resources, and avoid inconsistent judgments--all in the

1  furtherance of the "interests of justice."  Accordingly, the
2  interests of justice weigh heavily in favor of transfer.  See,
3  e.g., Cardoza v. T-Mobile USA Inc., No. 08-5120, 2009 WL 723843,
4  at *6 (N.D. Cal. Mar. 18, 2009); Bomanite Corp. v. Newlook Int'l,
5  Inc., No. 07-1640, 2008 WL 1767037, at *11 (E.D. Cal. Apr. 16,
6  2008) (Wanger, J.); Alexander v. Franklin Res., Inc., No.
7  06-7121, 2007 WL 518859, at *3 (N.D. Cal. Feb. 14, 2007); Jolly
8  v. Purdue Pharma L.P., No. 05-1452, 2005 WL 2439197, at *2 (S.D.
9  Cal. Sept. 28, 2005).

10          In opposition to the Receiver's motion to transfer
11  venue, plaintiff argues that the court should give weight to
12  plaintiff's choice of forum.  While a plaintiff's choice of forum
13  "is typically given considerable weight in the venue analysis. .
14  . [it] is not significant" in a matter where the plaintiff is not
15  a resident of the district the case is brought in.  Deputy v.
16  Long-Term Disability Plan of Sponsor Aventis Pharm., No.
17  C02-2010, 2002 WL 31655328, at *3 (N.D. Cal. Nov. 21, 2002)
18  (citing Bryant v. ITT Corp., 48 F. Supp. 2d 829, 832 (N.D. Ill.
19  1999); Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 54, n.12
20  (D. D.C. 2000)).  Plaintiff's choice of forum was not this court
21  but the Sacramento County Superior Court; it was the defendant
22  who removed the action to this court.  Further, plaintiff is a
23  Delaware corporation with its principal place of business in
24  Florida.  Accordingly plaintiff's choice of forum should not be
25  given a substantial amount of weight.[4]  (Compl. ¶ 1.)

26

27      [4]   Plaintiff also contends that disregarding plaintiff's
   choice of forum and transferring this action to the Northern
28  District would defeat the purpose of § 959(a) and the Ninth

1    Moreover, while a defendant normally "must make a

2 strong showing of inconvenience to warrant upsetting the

3 plaintiff's choice of forum," Decker Coal Co. v. Commonwealth

4 Edison Co., 805 F.2d 834, 843 (9th Cir. 1986), this premise does

5 not implicate the court's power to transfer an action where the

6 interests of justice so require.  See generally Madani, No.

7 07-4296, 2008 WL 268986, at *2 ("The question of which forum will

8 better serve the interest of justice is of predominant importance

9 on the question of transfer, and the factors involving

10 convenience of parties and witnesses are in fact subordinate."

11 (quoting Wireless Consumers Alliance v. T-Mobile USA, Inc., No.

12 03-3711, 2003 WL 22387598, at *4 (N.D. Cal. Oct.14, 2003)));

13 accord Amazon.com, 404 F. Supp. 2d at 1261.

14    Furthermore, the Receiver's arguments supporting

15 transfer arguably promote the mutual "convenience" of the parties

16 through the efficient use of their time and resources, and

17 plaintiff provides scant support for the argument that a transfer

18 from Sacramento to San Francisco would unduly inconvenience the

19 parties.  Rather, plaintiff only asserts that it "anticipates

20 propounding extensive discovery requests on the CDCR and Receiver

21 seeking the production of both information and records, including

22 correspondence and emails" relating to contract negotiations of

23 CDCR.  (Pl.'s Opp'n Mot. Transfer 6:12-14.)

24    While San Francisco is approximately ninety miles from

25

26 Circuit's ruling in this matter.  This argument is clearly belied
by the Ninth Circuit's own opinion, which specifically states
27 that "nothing in this opinion prevents the Eastern District from
coordinating with or, if appropriate, transferring the action to
28 the Northern District."  Med. Dev. Int'l, 585 F.3d at 1222.

1   Sacramento, the inconvenience of transferring the action is not

2   considerable.  As previously mentioned, plaintiff is a Delaware

3   corporation, with its principal place of business in Florida.

4   Plaintiff provided medical services to prisons located in

5   Southern California.  Plaintiff and defendants' counsel reside in

6   San Francisco.  There is no overwhelming nexus between this

7   action and the Eastern District, outside of the fact that the

8   Receiver and CDCR are located in Sacramento.  Plaintiff has not

9   indicated how it would be materially inconvenienced by issuing

10  discovery requests for electronic and paper documents a mere

11  ninety miles from Sacramento.  Plaintiff has also not identified

12  any witnesses that would be inconvenienced by discovery and

13  forced to travel to San Francisco.

14          The Receiver has carried his burden under § 1404(a) and

15  demonstrated that the interests of justice favor transferring

16  this action to the Northern District.  These considerations weigh

17  heavily against plaintiff's choice of forum, particularly since

18  any inconvenience incident to transfer appears to be negligible.

19  Accordingly, the court will grant defendant's motion to transfer

20  venue.

21          IT IS THEREFORE ORDERED that the Receiver's motion to

22  transfer venue to the Northern District of California be, and the

23  same hereby is, GRANTED.  The Clerk shall transmit the file to

24  the Clerk of the District Court for the Northern District of

25  California (San Francisco Division) for further proceedings.

26  DATED:  January 21, 2010

27

28
                        WILLIAM B. SHUBB
                        UNITED STATES DISTRICT JUDGE

                                12